507 A.2d 371

**Miriam B. DUFF, Appellee,**

v.

**Stewart M. DUFF, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1985.

Decided April 4, 1986.

Robert I. Whitelaw, Philadelphia, for appellant.

Albert Momjian, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

We granted allocatur in this case to review the lower court's treatment of a federal income tax liability in adjudicating appellee's claim for equitable distribution of the parties' marital assets under Section 401 of the Divorce Code of 1980 (Divorce Code), 23 P.S. § 401.[1]

The parties to this action were married in 1960. The marriage lasted until the parties separated in January of 1980. Appellee, Miriam B. Duff, brought an action in divorce under Section 201(c) of the Divorce Code seeking, *inter alia,* equitable distribution of marital property pursuant to Section 401. The only marital property to be distributed by the court was a block of shares of Rorer Group, Inc.[2]

1. Act of April 2, 1980, P.L. 63, No. 26, § 401.
2. The parties stipulated to the distribution of their remaining assets.

At the time of separation, appellant, Stewart M. Duff, held 4,318 shares of the Rorer stock. Between then and the time the trial court's decree *nisi* was entered, he had sold 2,400 of those shares, leaving 1918 shares in hand. The trial court found that those 1918 shares of Rorer stock were marital property subject to equitable distribution. In addition, the trial court found that 1400 of the 2400 shares sold by appellant after the parties' separation should be added to the marital estate. The trial court reached this conclusion by distinguishing between the uses to which the proceeds from the sale of these 2400 shares were put. Since the proceeds of 1400 of those shares were used for appellant's extraordinary living expenses, the trial court held that those 1400 shares were not excluded from the marital estate pursuant to Section 401(e)(5) of the Divorce Code.[3] The other one thousand shares sold after separation were sold in good faith, and thus excluded under Section 401(e)(5). The proceeds of their sale were used to pay a $16,224.00 joint liability for federal and state income taxes reported on their 1979 joint return, arising from the capital gains on earlier sales of Rorer stock made in 1979.

In August of 1980, the Internal Revenue Service assessed an additional $13,517.43 income tax, plus penalty and interest for 1979, caused by the incorrect treatment of the 1979 Rorer stock sales as long term capital gain instead of short term capital gain. Appellant contends that the courts below erred in failing to include this liability in the marital estate. The trial court did not address the issue.

The Superior Court, 335 Pa.Super. 638, 484 A.2d 814, concluded that the $13,517.43 tax assessment was not a joint liability. It arrived at this conclusion through a patent misunderstanding and confusion of the facts. The Superior

---

**3.** Section 401(e)(5) provides:

(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

(5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced.

23 P.S. § 401(e)(5).

Court confused the 1979 stock sales, the proceeds of which were not diverted to the exclusive benefit of either party, with the sales of stock which took place in 1980 after the parties' separation, from which part of the proceeds were used by appellant for his own extraordinary living expenses. The Superior Court also failed to recognize that the trial court found that the proceeds of one thousand of the 2400 shares sold in 1980 were used to discharge the parties' reported joint tax liability arising from the stock sales in 1979. Proceeding under these misconceptions, the Superior Court incorrectly held that all of the proceeds of the sales underlying the tax liability in question were used solely for appellant's benefit, and therefore the tax assessment was not a marital liability.

The sale of Rorer stock in 1979 occurred before the parties' separated. The proceeds were not diverted by either party to his or her exclusive use. The trial court correctly held that the parties' reported tax liability of $16,224.00 from these 1979 sales was a joint liability. Since the $13,517.43 tax assessment is simply an addition to the same tax obligation held to be a joint liability, the assessment should have also been treated as a joint liability to be included in computation of the marital estate.[4]

Accordingly, we reverse the order of the Superior Court and remand the case to the Court of Common Pleas of Montgomery County for a re-adjudication of the equitable distribution claim consistent with this opinion.

HUTCHINSON, J., files a dissenting opinion.

HUTCHINSON, Justice, dissenting.

I dissent. Appellant-husband induced the appellee-wife to file a joint tax return rather than separate tax returns for 1979. Appellant alone, without professional help, prepared

4. We remand this case in order to allow the trial court to re-evaluate the equitable distribution of the Rorer stock, taking into consideration the joint liability of the tax assessment, penalties and interest, and the circumstances surrounding the accrual of such assessment, penalties and interest. We make no recommendation as to how this division should be made.

the return.  Appellee later learned that the joint tax liability calculated by appellant exceeded the amount withheld by $16,224.00.  A factfinder could conclude that she agreed to share tax liability to this extent and agreed to the sale of some stock to pay this shortfall.  However, under no circumstances should we conclude that she shares responsibility for the additional assessment, originally $12,126.00, now more than $26,000.00.  This liability arose from appellant's failure to properly treat the gains realized from his exercise of certain stock options which he controlled and his stubborn refusal since notification of that additional assessment to meet his obligation to the Internal Revenue Service.  Merely because appellee agreed to share a $16,224.00 tax liability does not mean that she would have acquiesced to a greater sum.  Indeed, knowledge of the facts which produced this additional liability might have influenced her to file separately and thus avoid any responsibility for the tax deficiencies.  Any amounts owed the Internal Revenue Service are traceable to appellant's manipulation of his tax liability and marital assets, as are any unclarities in the record.  I would not offer him the chance to profit from that manipulation.