725 A.2d 717

**Jane E. DRAKE, Appellee,**

v.

**James G. DRAKE, Appellant.**

Supreme Court of Pennsylvania.

Submitted June 29, 1998.

Decided Feb. 25, 1999.

482

484

James G. Drake, pro se.

Janette Baisley, for Jane Drake.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

We granted review in this matter to resolve whether a commutation award in a workers' compensation claim is marital property and therefore subject to equitable distribution pursuant to Sections 3501 and 3502 of the Divorce Code.[1]

## FACTS

James Drake (hereinafter Husband) and Jane E. Drake (hereinafter Wife) were married on April 23, 1977. It was the first marriage for both parties. Husband and Wife have two

1. 23 Pa.C.S.A. § 3101 *et seq.*

children, Tiffany born on September 5, 1977, and James born on August 8, 1979. In December of 1977, several months after the couple married, Husband received his Bachelor of Science degree in geography, whereas, Wife had three years of college and needed credits to complete her degree. During the marriage, Wife was a homemaker until she went back to school and obtained a medical technology degree in 1983. Since then, she worked as a medical technologist, and was the main financial support for the family, because two years after she started her career, Husband suffered a work-related injury. At the time of parties separated in 1993, Wife earned $29,836 per year in employment income.

Husband was unemployed for the first year and a half of the marriage, and the parties lived on public assistance during that time. On January 9, 1978, Husband began work at Tygart Steel (employer) as a laborer. He worked there until July 29, 1985, at which time he injured the tendons and ligaments in his right wrist at work. At the time of his injury, Husband earned $371.28 per week ($19,306.56 per year or $1,608.88 per month). Husband also suffers from diabetes, which is unrelated to his work injury.

Following his wrist injury, Husband received workers' compensation benefits of $247.95 every two weeks ($6,446.70 per year, $537.23 per month or $123.38 per week). In April of 1988, Husband's employer apparently concluded that he could perform light duty work, and his status was changed to partial disability. However, he continued to receive payments until December 7, 1989 when his benefits terminated. (The record does not indicate if his benefits were reduced from April 1988 through December 1989.)

On October 3, 1990, employer and Husband entered a supplemental agreement, in which Husband agreed to a commutation [2] of his workers' compensation benefits for $42,000.00

2. A commutation award substitutes "one form of payment for another. In civil law, the conversion of the right to receive a variable or periodical payment into the right to receive a fixed or gross payment; a substitution of one sort of payment for another, or of money payment in lieu of a performance of a compulsory duty or labor. Commutation

(less counsel fees of $1,500). This lump sum award represented partial disability payments for a period of 447 and ½ weeks beginning December 7, 1989 (eight and one-half years, or until July 3, 1998). The Agreement also provided that Husband was "to place said commuted amount in an IRA account and in a high interest bearing account. Claimant also intend [sic] to obtain a Master's Degree to further his employment opportunities." As stated before, Husband had a Bachelor of Science degree. He returned to school following his work injury and obtained a teaching certificate in April 1987. However, there is no information in the record that he earned any credits towards a master's degree, either before or after the commutation agreement. Instead, since December 1987 through the time of this appeal, Husband has worked as a part time substitute teacher for the Ringgold School District. He has not obtained a full time job of any sort since his work injury. At the time of the parties' separation in 1993, Husband earned about $8,000.00. Wife alleges that Husband does not want to work in a school district other than Ringgold, a fact that Husband disputes.

After the Husband's work injury, Wife was primarily responsible for the marital expenses. For most of the marriage, the parties resided at 17 Second Street Extension, Donora, Pennsylvania, the house in which Husband was raised. The couple bought the residence from Husband's family in 1977 for $25,000.00. At the time of separation, the parties stipulated that the fair market value of house was $71,000.00, excluding any recorded encumbrance on the property. (Husband contended at the hearing that there was an outstanding debt on the property of $5,557.00.) [3]

may be effected by private agreement, but it is usually done under a statute." Black's Law Dictionary 254 (5th ed.1990).

3. Following the Master's division of property, Husband filed an exception to the Master's Report alleging, among other things, that the Master did not take into consideration that the marital residence had a mortgage remaining of $5,557.00. The trial court overruled the exception. The Superior Court held that Husband's contention regarding the mortgage was meritless because Husband and Wife stipulated to the value of the marital residence, including the $5,557.00 debt remaining, and that the Master took this amount into consideration when he

The Drakes separated July 28, 1993, and on August 8, 1993, Wife filed a complaint in divorce and a petition for custody of the couple's two children. The Court of Common Pleas of Washington County (trial court) appointed a Master in Divorce on March 27, 1995. Both parties consented to the entry of a final divorce decree on August 14, 1995. The Master issued a Report on January 4, 1996, in which he recommended that the marital estate be divided equally, with Husband receiving the marital home and Wife receiving various bank deposit accounts and proceeds from insurance. The bulk of the accounts were funded with the commutation award. The Report further recommended that the Husband pay Wife $15,000.00 in cash within 120 days. If the amount was not paid in 120 days, the house was to be sold and the $15,000.00 taken from the proceeds of the sale. The Master specifically found that the proceeds of the commutation of Husband's workers' compensation benefits were marital property because they were received during the marriage and replaced wages earned during the marriage. The trial court adopted the Master's findings and said that Husband's workers' compensation settlement was reimbursement for lost wages during the marriage and therefore, was martial property.

Husband filed exceptions to the Master's Report, which the trial court denied by Order dated February 14, 1996. In a separate Order, the trial court granted the parties a final decree in divorce. A timely appeal to the Superior Court was filed by Husband on a number of grounds, including the allegation that the trial court erred because it failed to take into consideration the $5,557.00 of marital debt attributable to the marital residence, and that it improperly included the commutation award as a marital asset. The Superior Court affirmed the trial court, finding that the evidence supported the distribution of assets that Husband's workers' compensation settlement was reimbursement for lost wages during the marriage and therefore, it was marital property. We granted

divided the property and ordered the Husband to pay Wife a $15,000.00 cash payment. We granted review of this matter only on the issue of whether the commutation award was properly considered as marital property.

appeal to decide only if the commutation award was marital property.

## ANALYSIS

### I. Introduction

Before we reach the exact issue on appeal, it is useful to begin our review with a brief history of the distribution of assets and liabilities as part of a divorce. Through the first half of the twentieth century, most states limited the grounds for divorce and, before granting one, required a spouse to show some form of marital offense on the part of the other spouse. *See, e.g.,* Sarah E. Fette, Comment, *Learning From Our Mistakes: The Aftermath of the American Divorce Revolution as a Lesson in Law to the Republic of Ireland,* 7 Ind. Int'l & Comp. L.Rev. 391, 393 (1997). These fault-based laws were often unrelated to the true causes of the breakdown of a marriage. In the middle of this century the divorce laws gradually relaxed, and in recent years, a number of legislatures, including ours, enacted no-fault divorce laws (although Pennsylvania retained a fault-based provision for divorce). 23 Pa.C.S.A. §§ 3102, 3301(a), (c), (d). Currently, such no-fault laws exist in most jurisdictions across our nation. Fette, *supra; See also,* 24 Am.Jur.2d *Divorce and Separation* § 29 (1983). The purpose of these no-fault divorce laws is to effect a "clean break" between spouses, and encourage a one-time division of marital property. Fette, *supra* (citing Cynthia Starnes, *Divorce and the Displaced Homemaker,* 60 U. Chi. L.Rev. 67, 108 (1993)).

Concurrent with the arrival of no-fault divorce, many states in the second half of this century rejected traditional principles of division of property following divorce and adopted "equitable distribution" to divide assets at divorce. The traditional methods to divide property at divorce were based on very different systems, either the title [4] or the community

---

4. The title system (also called the common law system) of dividing property essentially required courts to award property to the spouse who held title to the property during the marriage. Bell, *supra* at 117–119 (citing Brett R. Turner, *Equitable Distribution of Property* § 1.02, at 4 (2d ed.1994) and Leslie Harris et al., *Family Law* 329 (1996)). As a

property [5] system. A majority of states, including Pennsylvania, had used some form of the title system. *See generally DiFlorido v. DiFlorido*, 459 Pa. 641, 331 A.2d 174 (1975); Deborah H. Bell, *Equitable Distribution: Implementing the Marital Partnership Theory Through the Dual Classification System*, 67 Miss. L.J. 115 (1997).

The theory of equitable distribution derives from the "marital partnership" theory of community property law. However, the courts attempt to split property equitably, instead of equally, taking into consideration such factors as length of marriage, the contributions of both spouses, ages and health of each spouse. Obviously, a benefit of equitable distribution versus the community property system is that equitable distribution statutes allow a considerable degree of judicial discretion in the distribution of property. Whereas community property regimes automatically grant each spouse a one-half interest in the marital asset at issue, the equitable distribution scheme allows the trial court to weigh the particular equities of the case to control the asset allocation.

Currently, most states have adopted some form of an equitable distribution scheme, but they use different methods for classifying assets included in the divisible estate. Some states may include all property that either spouse owns, with no

result, a Husband would retain all property titled in his name, and a Wife would keep the property titled in her name. The court would divide equally the property held jointly between the divorcing spouses. Generally, if a Wife had insufficient property or earning potential to support herself after divorce, courts would award permanent alimony. The alimony was usually a set monthly amount for an indefinite period, until either party died or Wife remarried. Awards of alimony in the title system were closely related to fault-based notions of divorce. Bell, *supra*, at 119.

5. The community property system, still in effect in some jurisdictions today, treats the married couple as an economic unit and, upon divorce, the court equally divides all property and income acquired during the marriage. A party's title to the property is irrelevant; each spouse owns one-half of all property obtained during the marriage. However, property that either spouse gets through gift, inheritance, or which was owned before the marriage, is separate property. The nine states with community property systems are Louisiana, Texas, New Mexico, Arizona, California, Washington, Idaho, Nevada, and Wisconsin (with adoption of Uniform Marital Property Act).

distinction between marital and separate property, even if obtained before the marriage or by gift. *See, e.g.,* Joseph A. McKnight, *Defining Property Subject to Division at Divorce,* 23 Fam. L.Q. 193, 196 (Summer, 1989).

However, most states including Pennsylvania, have chosen some form of "dual classification" system of equitable distribution, in which the court must distinguish between property that is marital and that which is separate before the Court equitably divides the marital property. The line at times blurs, such as when separate property is shared or mixed with marital assets, and must often be settled on a case-by-case basis when there is some dispute.

## II. Pennsylvania's Equitable Distribution Statute

The Divorce Code requires a court first to categorize items of property as marital or nonmarital. 23 Pa.C.S.A. § 3501(a). The statute, at Section 3501, defines marital property as:

[A]ll property acquired by either party during the marriage, including the increase in value, prior to the date of final separation, of any nonmarital property acquired . . .

23 Pa.C.S.A. § 3501. Timing rather than the method of obtaining the property controls what is marital property under the Code and the statute presumes that property acquired during the marriage is "marital." 23 Pa.C.S.A. § 3501(b).[6] *See also Fidelity Bank v. Carroll,* 416 Pa.Super. 9, 13, 610 A.2d 481, 483 (1992), *aff'd,* 539 Pa. 276, 652 A.2d 296 (1994) (property that either spouse gets during the marriage is presumed marital).

---

**6.** Section 3501(b) sets forth the statutory presumption that all property acquired during the marriage is marital unless it fits within one of the *eight exceptions set forth in Section 3501(a),* as follows:

All real or personal property acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a).

23 Pa.C.S.A. § 3501(b).

Notwithstanding this definition, the Code lists eight classifications of property that are not marital, even though possessed during the parties' marriage.[7] These exceptions generally exclude property that a spouse owned before marriage or property he or she has "acquired" during the marriage, such as a gift or an inheritance. 23 Pa.C.S.A. 3501(a)(1) and (a)(2). The Code also excludes from marital property federal disability payments and proceeds from a settlement or award if the right to receive such award "accrued" outside the marriage. 23 Pa.C.S.A. § 3501(a)(6), (a)(8).

Once the court defines the marital estate, it then divides the property according to the following enumerated factors of Section 3502:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

7. These exceptions are listed as follows:
(1) Property acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage.
(2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.
(3) Property acquired by gift, except between spouses, bequest, devise or descent.
(4) Property acquired after final separation until the date of divorce, except for property acquired in exchange for marital assets.
(5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the date of final separation.
(6) Veterans' benefits exempt from attachment, levy or seizure pursuant to the act of September 2, 1958 (Public Law 85–857, 72 Stat. 1229), as amended, except for those benefits received by a veteran where the veteran has waived a portion of his military retirement pay in order to receive veterans' compensation.
(7) Property to the extent to which the property has been mortgaged or otherwise encumbered in good faith for value prior to the date of final separation.
(8) Any payment received as a result of an award or settlement for any cause of action or claim which accrued prior to the marriage or after the date of final separation regardless of when the payment was received.
23 Pa.C.S.A. § 3501.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party, including Federal, State and local tax ramifications, at the time the division of property is to become effective.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502.

## III. Treatment of Workers' Compensation Commutation Award

■ We now apply the above analysis to the inquiry here: Are the proceeds of a commutation of a workers' compensation claim marital property? We begin by presuming that because Husband unquestionably sustained his work-related injury and received the proceeds of his commutation award during the marriage, the award is marital property. However, if Husband can show that the commutation award "was acquired by a method" set forth in 3501(a)(1) through (a)(8), then these proceeds are his separate property and would not be subject to equitable distribution. 23 Pa.C.S.A. § 3501(b).

Husband argues that the entire commutation award is his separate property either because it is a "disability" payment or alternatively, because it represents a replacement of future earnings. First, we address Husband's argument that the

award is a "disability" payment and consequently not part of the marital estate.

### a. Disability payment:

The only provision within the Divorce Code concerning disability payments is Section 3501(a)(6), which provides that federally created veterans' disability payments are not marital property. Section 3501(a)(6) defines these benefits to include:

> Veterans' benefits exempt from attachment, levy or seizure pursuant to the act of September 2, 1958 (Public Law 85–857, 72 Stat. 1229), as amended, except for those benefits received by a veteran where the veteran has waived a portion of his military retirement pay in order to receive veterans' compensation.

This statutory language conforms the Divorce Code with federal statutes and United States Supreme Court decisions, which taken together, hold that federal law governs these federal benefits and the states cannot treat them as marital property at divorce.

In *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), a divided Supreme Court found that the federal statute, which created these service connected disability payments, controlled and that military benefits were not assignable. Accordingly, *McCarty* held that a military pension plan was not property subject to division at divorce. In 1982, in response to the *McCarty* decision, Congress enacted the Uniformed Services Former Spouse Protection Act (Spouse Protection Act) and provided that certain military retirement pay, "disposable retired or retainer pay," could be community property. 10 U.S.C § 1408 (1982).

After that, in *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), the Supreme Court held that the Spouse Protection Act allowed states to treat military retirement pay as marital property, but not veterans' disability payments of any kind. In reaching this conclusion, the *Mansell* court found that although the Spouse Protection Act permitted a state to treat retirement pay as marital property, it did not make such a proviso for disability payments. Apply-

ing the rationale in *McCarty*, these disability payments were not assignable, were not covered by the Spouse Protection Act, and could not be marital property.

For the reasons we set forth in this Opinion, we reject Husband's argument that a disability payment is per se excluded from the definition of marital property.[8] While our statute specifically excludes veterans' disability benefits from marital property, it makes no such exclusion for any other type of disability payment. A disability payment that is not a federally created veterans' benefit does not fit within any of the exceptions set forth in Section 3501(a)(1) through (a)(8) and can be property of the marriage. The Superior Court appropriately rejected Appellant's arguments in this regard.

### b. Workers' Compensation award as replacement of future earnings:

We next address Husband's argument that the commutation award is excludable from marital property because it represents "future" earnings. This is an issue of first impression and we look to other jurisdictions for guidance. Some jurisdictions exclude a lump sum workers' compensation award from marital property if it replaces "future earnings," while others do not so hold. Those that exclude workers' compensation from the divisible estate follow the analytic approach to classify marital property[9] and look to the nature

---

8. We are aware that some Superior Court cases have intimated that disability payments are per se excludable from marital property. *See, e.g., Ciliberti v. Ciliberti,* 374 Pa.Super. 228, 542 A.2d 580 (1988). In *Ciliberti* the Superior Court held that the portion of a disability pension plan that represented retirement benefits was marital property. However, the Superior Court "declined to hold that true disability payments are marital property subject to equitable distribution." In dicta supporting its decision, the Superior Court stated that disability benefits were "comparable to Workmen's Compensation disability payments." *Id.* at 233–34, 542 A.2d 580. Since *Ciliberti,* the Superior Court has held that disability payments are not marital property. *See, e.g., Malseed v. Malseed,* 388 Pa.Super. 214, 565 A.2d 453 (1989)(disability payments, including workers' compensation disability payments, are not marital property, relying upon *Ciliberti* ).

9. *See, e.g., Miller v. Miller,* 739 P.2d 163 (Alaska 1987) (if workers' compensation is meant to replace lost earnings during the marriage,

of the underlying loss when classifying the award as marital or separate property. Generally, if the award replaces lost wages during the marriage, then the award is marital property. However, to the extent that the award represents future earnings, disability, or personal injury compensation, the award is separate property. *See, e.g.*, Annotation, *Divorce and Separation: Workers' Compensation Benefits as Marital Property Subject to Distribution*, 30 A.L.R.5th 139 (1997); *Crocker v. Crocker*, 824 P.2d 1117 (Okla.1991).

While the majority of jurisdictions to consider the issue seem to have followed this analytic view, a number of jurisdictions have rejected it and have adopted either a "unitary," "mechanistic," or a "case by case" approach to these payments.[10] *See generally Marsh v. Marsh*, 313 S.C. 42, 44–45,

the award is marital property; however, if the award, although received during the marriage, compensates for earnings outside of the marriage, then that portion of the award is not marital.); *Weisfeld v. Weisfeld*, 545 So.2d 1341 (Fla.1989) (court must look to purpose of award, and if the award compensates for lost wages, or medical expenses incurred during the marriage, the proceeds are marital property; however, the portion of the award attributable to personal injury, disability and future earnings, is not marital.); *Cook v. Cook*, 102 Idaho 651, 637 P.2d 799 (1981) (if the award compensated for loss of earnings during the marriage, the award is community property; otherwise it is not); *Cummings v. Cummings*, 540 A.2d 778 (Me.1988) (awards paid for injuries during the marriage are marital property; however, commutation awards received after separation and for future earnings are not marital property.); *Queen v. Queen*, 308 Md. 574, 521 A.2d 320 (1986) (portion of settlement award in workers' compensation action which represented future wages was not marital property); *Marriage of Blankenship*, 210 Mont. 31, 682 P.2d 1354 (1984) ( to determine if settlement of workers' compensation claim is marital property, must know purpose of award, and when it began.); *Crocker v. Crocker*, 824 P.2d 1117 (Okla.1991) (compensation award is marital property only to extent it replaces wages during the marriage); *Kirk v. Kirk*, 577 A.2d·976 (R.I.1990) (workers' compensation award is marital property only if it replaces lost wages during the marriage; it is non-marital property if it is for disability).

10. *See, e.g., Goode v. Goode*, 286 Ark. 463, 692 S.W.2d 757 (1985) (if injury occurs during the marriage, the entire settlement award is marital property subject to equitable distribution.); *In re: Marriage of DeRossett*, 173 Ill.2d 416, 219 Ill.Dec. 487, 671 N.E.2d 654 (1996) (workers' compensation award that arose during the marriage and compensated for an injury during the marriage was community property); *Johnson v. Johnson*, 638 S.W.2d 703 (Ky.1982) (workers' compensation award received during the marriage was marital property with

437 S.E.2d 34, 35 (1993) (discussing the various methods for classifying personal injury or workers' compensation awards as unitary, analytic or mechanistic); Grace Ganz Blumberg, *Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitutes: An Insurance, or Replacement Analysis,* 33 UCLA L.Rev. 1250 (1986).

Under the "unitary" and "mechanistic" methods, unlike the analytic, it is irrelevant that the award replaces future earnings, personal injury, or other type of loss. Instead, the "unitary" approach classifies any personal injury award or settlement as "personal" and therefore separate property of the injured spouse, regardless of the underlying loss that the award replaces. *See, e.g., Richards v. Richards,* 59 N.M. 308, 283 P.2d 881 (1955); *Gloria B.S. v. Richard G.S.,* 458 A.2d 707, 708 (Del.Fam.Ct.1982). The "mechanistic" approach looks to when parties obtained the property and if received during the marriage, then the award is marital. Timing of the receipt of proceeds, not the underlying purpose of the award, is the determining factor in deciding whether the monies are marital property. *See, e.g., Johnson v. Johnson,* 638 S.W.2d 703 (Ky.1982); Blumberg, *supra.*

A careful examination of our statute reveals that it employs a hybrid of the "mechanistic" and case by case approach;[11] thus, requiring an evaluation similar to that which the Illinois Supreme Court employed in the case of *In re Marriage of DeRossett,* 173 Ill.2d 416, 219 Ill.Dec. 487, 671 N.E.2d 654 (1996). In *DeRossett,* the Illinois Supreme Court rejected the "analytic" method and found that a lump sum workers' compensation award was marital property if the right to receive the award accrued during the marriage. The parties in

plain reading of statute that defined "marital property."); *Orszula v. Orszula,* 292 S.C. 264, 356 S.E.2d 114 (1987) (workers' compensation award is included in statutory definition of marital property acquired during marriage and is subject to equitable distribution).

11. Indeed, other jurisdictions have classified our Commonwealth as adopting the "mechanistic" approach. *See, e.g., Marsh,* 313 S.C. at 44, 437 S.E.2d at 35 (citing *Platek v. Platek,* 309 Pa.Super. 16, 454 A.2d 1059 (1982)).

*DeRossett* were married from April 1987 through February 1994. The injured spouse suffered a work-related injury on January 18, 1990. At the dissolution hearing in July 1994, the injured spouse had not yet received a lump sum settlement of the compensation award. The *DeRossett* court held that, although the injured spouse had not received the award, the claim arose during the marriage and was marital property. *Id.* It was immaterial whether the award replaced wages or "future earnings." Rather, the sole issue was when did the right to receive the award accrue.

This result appears identical if we take the facts in *DeRossett* and examine them pursuant to our Divorce Code. Section 3501(a)(8), the subsection of the statute that deals specifically with monetary awards, states that payments may not be marital property if they are the result of:

> any cause of action or claim which accrued prior to the marriage or after the date of final separation regardless of when the payment was received.

23 Pa.C.S.A. § 3501(a)(8)(emphasis added); *See also Platek v. Platek,* 309 Pa.Super. 16, 454 A.2d 1059 (1982);[12] *Kozich v. Kozich,* 397 Pa.Super. 463, 580 A.2d 390 (1990), *app. denied,* 527 Pa. 635, 592 A.2d 1302 (1991).[13]

The Divorce Code at Section 3501(a)(8) makes no distinction concerning the purpose of the award or settlement, but posits that it applies equally to all claims or causes of action for personal injury, lost wages, disability or other damage. Unlike the "analytic" approach, it is irrelevant that the settlement or award is for disability payments, personal

---

**12.** In *Platek,* the Superior Court rejected the argument that proceeds from a settlement award in a personal injury action were not marital property because the award compensated the injured party for her physical well-being, "property" that she brought to the marriage. The *Platek* court held that, "in construing the phrase, 'property acquired prior to the marriage . . .' we look to the everyday, popular meaning of those words." The court decided that the settlement proceeds that the Wife received during the marriage were marital property.

**13.** The *Kozich* court held that a Husband's settlement award in a personal injury action, which was negotiated and received during the marriage for an injury that occurred during the marriage, was marital property subject to equitable distribution.

injuries, lost wages, or future earnings. We look only to the timing of the right to receive it. 23 Pa.C.S.A. § 3501(a)(8). Hence, like the Illinois Supreme Court in *DeRossett,* we reject the adoption of the analytic scheme. Instead, we look only to the Divorce Code that our legislature enacted. In doing so, clearly our statute does not permit us to look at the purpose of the commutation award.

To find whether an award, workers' compensation or otherwise, is marital property under Section 3501(a)(8), we must first evaluate when the right to receive that payment arose. Here, the settlement agreement between Husband and his employer, by its terms, covers workers' compensation for a period of 447 and $\frac{1}{7}$ th weeks from December 7, 1989. Some wages could be classified as "future earnings" because they arguably extended through July 1998. However, when Husband entered the commutation agreement he exchanged those future earnings for the right to receive one lump sum monetary award.

The critical question is not whether the award represented a benefit period extending past the marriage, but whether the right to seek a commutation of those earnings accrued during the marriage. Here, Husband suffered a work-related injury on July 29, 1985. Soon thereafter, he filed a workers' compensation petition and received biweekly benefits. After that, in October 1990, Husband and his employer entered into an agreement to commute his partial disability payments, effective December 7, 1989, the date agreed to as the effective date of Husband's partial disability. Thus, as of December 7, 1989, Husband certainly had an enforceable right to this lump sum commutation award, and Husband's claim "accrued," as that term is used in the Divorce Code, well before the parties separated in July of 1993. *See generally Pennsylvania Manufacturers' Association Ins. Co. v. Wolfe,* 534 Pa. 68, 626 A.2d 522 (1993) (right to subrogation rights did not vest until a third party tortfeasor offered settlement); *Bell v. Brady,* 346 Pa. 666, 669, 31 A.2d 547, 549 (1943) (cause of action accrues only when one has the right to institute suit). Therefore, the Superior Court properly affirmed the trial

500

court's finding that the commutation award is marital property.

The inquiry does not end here. Once a court concludes that a workers' compensation award is marital property, it has discretion to award all, or a portion, of that award to the injured spouse. Although our Divorce Code does not allow us to consider the purpose of the award in deciding if the award is marital or separate property, it does require an examination of these equitable considerations at the time the court divides the property. Concerns for the injured spouse's financial security, disability, and/or employability are specifically addressed in Section 3502. The Divorce Code directs the courts to consider, among other factors, the "age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs" of the parties, and "the sources of income of both parties, including, but not limited to medical, retirement, insurance or other benefits." Sections 3502(a)(3); 3502(a)(6). *See also DeRossett, supra.* (While rejecting the "analytic" approach, concerns addressed there were part of the statutory mechanism to divide equitably that property.)

It is entirely possible that a court could distribute the entire workers' compensation award solely to the injured spouse, assuming that his or her age, health, vocational skills, employability and access to benefits supported this determination. It is also possible, as here, the court could appropriately distribute the proceeds of the award to the noninjured spouse because the award represented a replacement of wages during the marriage. The court may consider the purposes of the award and the injured spouse's health, employability and injury to equitably divide marital property, in accordance with the mandates of Section 3502.

## CONCLUSION

In Pennsylvania, we hold that a workers' compensation commutation award that "accrued" during the marriage can be marital property subject to equitable distribution pur-

suant to Sections 3501 and 3502 of the Divorce Code. We emphasize that our conclusion does not mean that the court must equally divide the proceeds of the award, or even that the injured spouse should not keep the entire award. The trial court can, but does not have to, award any part or all of the proceeds entirely to the injured spouse. We also must stress that the court is not required to divide all marital property between the spouses based on the same percentage of division. Classifying the property as marital merely gives the family court the authority to divide the award as the equities presented in the particular case may require.

For example, the award or settlement proceeds from a disability or workers' compensation claim may be the only asset in a long marriage. The injured spouse who collects the monies may be in a position to provide for himself or herself better than the other spouse. It could be that the injured spouse is not financially dependent upon a settlement award, whereas the noninjured spouse may be completely dependent on it. In these circumstances, the court may divide the property with the majority of the award going to the noninjured spouse. On the other hand, the spouse who collects the payment may have particular health concerns or disability and the entire award could be distributed to the injured spouse. It simply depends upon the equities presented in each particular circumstance.

In this case, the trial court, as the fact finder, made distribution based on the eleven criteria set forth in Section 3502.[14] The Superior Court appropriately affirmed this finding after evaluating the overall distribution scheme established by the court order. Would it have made sense to give Husband the monies left from the commutation and give the Wife the marital home? That is a question reserved to the discretion of the trial court, and the Superior Court properly refused to disturb that finding without a showing that the trial court abused its discretion. Here, the master and the trial court made an educated distribution of property based upon the equities presented to it. Husband has not attempted to

14. 23 Pa.C.S.A. § 3502.

pursue his master's degree, as he said he would in the agreement and it appears from the record that he has not attempted to broaden his base geographically or otherwise to increase his income. Further, he has a residence valued at $71,000.00 that he can sell for living expenses, including rent to subsidize his income. Wife has been a major support to the marriage, both in raising the children and in contributing her income for marital expenses. She also supported the marital expenses, as well as Husband, from the date of the accident, July 29, 1985, until the Husband received the lump sum in 1990, a period of five years. She does not own a residence and there is every reason to believe that Husband can earn the same future income as Wife. The distribution of marital property in an equitable manner protected any future income that was of concern in the commutation award at issue this case.

The commutation award at issue here is marital property, and the trial court appropriately distributed it in accordance with our Divorce Code. We affirm the decision of the Superior Court, which affirmed the decision of the trial court.

Justice CASTILLE files a dissenting opinion in which Justice ZAPPALA joins.

CASTILLE, Justice, dissenting.

Here, the majority posits that, pursuant to subsection 3501(a)(8), it is irrelevant whether a settlement or award is for disability payments, personal injuries, lost wages, or future earnings. Instead, the majority reasons that the timing of the right to receive the award is the pivotal factor in the determination of whether or not the award is marital property. I respectfully dissent because I do not believe that a workers' compensation commutation award which represents future earnings is marital property subject to equitable distribution.

Pennsylvania's Divorce Code provides:

3501. Definitions

(a) General rule.—As used in this chapter, "marital property" means all property acquired by either party during the marriage, including the increase in value, prior to the date

of final separation, of any nonmarital property acquired pursuant to paragraphs (1) and (3), except:

. . .

(8) Any payment received as a result of an award or settlement for any cause of action or claim which accrued prior to the marriage or after the date of final separation regardless of when the payment was received.

23 Pa.C.S. § 3501.

In *Moore v. Moore*, 710 A.2d 633 (Pa.Super.1998), the Superior Court refused to interpret subsection 3501(a)(8) to include a workers' compensation commutation award as marital property. In *Moore*, the husband was injured at work and received a one-time lump sum payment. The trial court found that the proceeds of the worker's compensation commutation award were marital property subject to equitable distribution. The Superior Court reversed, finding that the benefits in question were paid in lieu of future earnings and, consequently, did not constitute marital property. *Id.* at 635.

I am persuaded by the reasoning of *Moore*. The portion of a workers' compensation commutation award which represents the injured employee's loss of ability to work in the future, often long past the date of separation, should not be subject to equitable distribution. A spouse has no right to the other spouse's earnings after the marriage ends; therefore, the spouse should have no right to a workers' compensation commutation award that is intended as a substitute for those future earnings.

As the majority points out, courts in other jurisdictions which have addressed this issue have reached similar conclusions. *See Weisfeld v. Weisfeld*, 545 So.2d 1341 (Fla.1989) (portion of worker's compensation award for future loss of earnings and loss of earning capacity and future medical expenses are the separate property of the injured spouse); *Miller v. Miller*, 739 P.2d 163 (Alaska 1987) (a workers' compensation disability award is marital property only to the extent that it compensates for loss of earnings during the marriage; to the extent that the award compensates for loss

of post-divorce earnings, it must be considered separate property, even if the compensable injury occurred during the marriage); *Cook v. Cook,* 102 Idaho 651, 637 P.2d 799 (1981) (lower court erred in treating the defendant's right to receive future workmen's compensation benefits as community property because benefits beyond an amount attributable to lost earning power during the marriage constitute the separate property of the injured spouse); *Cummings v. Cummings,* 540 A.2d 778 (Me.1988) (the circumstance that future workers' compensation payments are made in a single, lump-sum award does not alter the fact that the award compensates for lost earnings that have accrued after the dissolution of the marriage; therefore, the award is a non-marital asset); *Queen v. Queen,* 308 Md. 574, 521 A.2d 320 (1987) (only the portion of husband's workmen's compensation award compensating for loss of earning capacity during the marriage is marital property subject to equitable distribution).

Here, the commutation award consisted of benefits at the rate of $93.93 per week for a period of 447.1 weeks extending from December 7, 1989 to July 3, 1998. Thus, the commutation award was to compensate appellant for the decrease in his earning capacity for a period which extended beyond the date of separation, which occurred in July, 1993.

For the aforementioned reasons, I dissent and would reverse the Superior Court and remand for a determination of what portion of the award represented the husband's future earnings after the date of separation in order to exclude that portion from the equitable distribution.

Justice ZAPPALA joins this dissenting opinion.