**Wynder v. Wynder**

418

C.P. of Lawrence County, no. 11380 of 2004, C.A.

*Anthony Piatek,* for plaintiff.
*Shawn A. Sensky,* for defendant.

HODGE, ·J., March 1, 2011—The plaintiff and defendant have presented exceptions to the report of the master relative to the economic claims attendant to the parties' divorce action.

The parties were married on May 14, 1994 and separated on September 22, 2004. Plaintiff presented seven exceptions for review: 1) the master erred in failing to award plaintiff/wife 65 percent of the marital assets; 2) the master erred in failing to award plaintiff/wife 65 percent of the marital portion of husband's pension plan; 3) the master erred in failing to award plaintiff/wife 65 percent of the marital portion of the 401k plan; 4) the master erred in failing to require defendant/husband to pay 100 percent of plaintiff/wife's attorney's fees; 5) the master erred in

failing to require defendant/husband to pay 100 percent of the master's fees; 6) the master erred in failing to require defendant/husband to pay 100 percent of the QDRO preparation fee; and 7) the master erred in failing to value the defendant/husband's 1999 Toyota Tacoma at $8,000.

The defendant presented nine exceptions for review: 1) the master erred in awarding plaintiff/wife 57.5 percent percent of the marital assets; 2) the master erred in requiring defendant/husband to pay $1,800 of plaintiff/wife's attorney's fees 3) the master erred in requiring defendant/husband to pay two-thirds of the QDRO preparation fee; 4) the master erred in requiring defendant/husband to pay two-thirds of the master's fees; 5) the master erring by using the full value of defendant/husband's 401k plan for the purposes of equitable distribution; 6) the master erred in not giving defendant/husband credit in equitable distribution for making payments in the sum of $5,360.00 towards a $30,000 loan on defendant/husband's 401k plan; 7) the master erred in not giving defendant/husband credit in equitable distribution for payments defendant/husband made on a loan associated with a 1999 Dodge Caravan in the amount of $2,756.05 and payments made on a master card in the amount of $824.08;8) the master erred in valuing the Husqvrana Zero Turn riding mower at $2,000 and the Honda push mower at $200; and 9) the master erred in valuing the $30,000 401k plan loan payoff amount at $28,973.63.

In disposing of these exceptions, the court observes that while a master's report is advisory only, it is to be given great deference. *Fiorelli v. Fiorelli*, 195 A.2d 369 (Pa. Super. 1964), *Morschhauser v. Morschhauser*, 516 A.2d 10 (Pa. Super. 1986). A reviewing court has a duty to make a complete and independent review of the

proceeding below. *Rollman v. Rollman*, 421 A.2d 755 (Pa. Super. 1980).

In reviewing master's considerations, however, the report should be given "fullest consideration" particularly on issues of credibility. *Kohl v. Kohl*, 564 A.2d 222 (Pa. Super. 1989). The review is intended to discover inherent improbabilities in the stories of the witnesses, inconsistencies and contradictions, bias, interest, and opposition to incontrovertible physical facts by which credibility may be ascertained. *Rollman*, supra. However, because the master is the person hearing the testimony and observing the demeanor and appearance of the witness, any issue of credibility must be resolved by giving the master's findings the fullest consideration. *Rorabaugh v. Rorabaughu*, 448 A.2d 64 (Pa. Super. 1982). With this standard in mind, the following is a discussion and disposition of the parties' exceptions.

## PLAINTIFF'S EXCEPTION 1

*The master erred in failing to award plaintiff/wife 65 percent of the marital assets.*

In her first exception, wife contends that the master erred in failing to award her a greater portion of the marital assets. In support of her argument, wife asserts that due to the nature of the marital assets, the parties have a relatively small portion of funds available for immediate distribution. Wife further contends that based on the factors set forth in 23 Pa.C.S. §3502, she is entitled to a greater distribution of the marital property.

A trial court has broad discretion in fashioning equitable distribution awards. *Isralsky v. Isralsky*, 824 A.2d 1178,1184 (Pa.Super.2003). The Divorce Code

further provides that a trial court

> Shall...equitably divide, distribute or assign, in kind or otherwise, the marital property. between the parties in such proportions and in such manner as the court deems just after considering all relevant factors....23 Pa.C.S. §3502(a).

Thus, the affirmed objectives of the Divorce Code are to "effectuate economic justice between the parties... and insure a fair and just determination of their property rights." *Anzalone v. Anzalone*, 835 A.2d 773, 785 (Pa. Super. 2003). Moreover, a trial court has "the authority to divide the award as the equities presented in the particular case may require." *Drake v. Drake*, 555 Pa. 481, 725 A.2d 717, 727 (1999).

The master specifically discussed each factor to the extent that they were applicable to the facts relative to this case. The master was aware of and commented, on each provision that resulted in wife being awarded a distribution fashioned in her favor. Specifically, the master addressed the parties' current and future earnings, the difference in the parties' retirement benefits, the difference in the parties' health benefits, and the assets already obtained by each party. The court finds that the master did not abuse his discretion in his division of the marital assets. He effectuated economic justice by finding that the factors slightly favored wife over husband and, thus, recommended an appropriate division of the marital property.

Accordingly, plaintiff's exception 1 is denied.

PLAINTIFF'S EXCEPTION 2

*The master erred in failing to award plaintiff/wife 65 percent of the marital portion of husband's pension plan.*

For the reasons previously set forth in plaintiff's exception 1, plaintiff's exception 2 is denied.

### PLAINTIFFS EXCEPTION 3

*The master erred in failing to award plaintiff/wife 65% of the marital portion of the 401k plan.*

For the reasons previously set forth in plaintiff's exception 1, plaintiff's exception 3 is denied.

### Plaintiff's Exception 4

*The master erred in failing to require defendant/ husband to pay 100 percent of plaintiff/wife's attorney's fees.*

Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution. *Perlberger v. Perlberger*, 626 A.2d 1186,1206-07 (Pa.Super. 1993). Moreover, "[c]ounsel fees are awarded only upon a showing of need" and where specific circumstances warrant such an award. *Harasym v. Harasym*, 614 A.2d 742, 747 (Pa.Super. 1992); *Johnson v. Johnson*, 529 A.2d 1123 (Pa.Super. 1987).

Wife argues that the master should have required husband to pay 100 percent of he attorney's fees, and bases her argument on the vast difference in the parties' income and earning potential. Wife further argues that after these proceedings are completed, her ability to pay for

her attorney's fees will decrease, as her alimony pendent lite will terminate. Wife incurred a total of $6,044.51 in attorney's fees; this figure does not include costs for litigation involving custody. Husband was required to pay $1,800.00 towards this amount. Although the court agrees that wife's income and earning potential is not on par with husband's, wife did testify that she has been making monthly payments towards her attorney's fees. The court therefore finds that the master appropriately factored wife's ability to pay and her current and future financial position in requiring husband to pay almost 30 percent of wife's attorney's fees relating to the divorce and support proceedings.

Plaintiff's exception 4 is therefore denied.

## PLAINTIFF'S EXCEPTION 5

*The master erred in failing to require defendant/ husband to pay 100 percent of the master's fees.*

Plaintiff's fifth exception basically contends that the master erred by requiring her to pay a portion of the master's fees. Wife's argument is based on the same assertions set forth in her fourth exception; specifically that the vast difference in the parties' income and earning potential results in the master's division of responsibility for the master's fees being unfair.

A review of the master's recommendation indicates that the total balance due for master's fees is $2,375.00. Of this amount, husband was required to pay 66 2/3 percent or $1,583.33. Wife was required to pay 33 1/3 percent or $791.67. The master explained that, "[b]ased upon all considerations of equitable distribution and costs analysis, the Master recommends husband shall be responsible

for 66 2/3 % of the [remaining] fee..., and wife shall be responsible for 33 1/3 % of the remaining fee."

The court finds that in lieu of the favorable equitable distribution award to wife and having considered the minimal costs incurred by wife for the master's fee, the master's distribution of costs for his services was appropriate. Plaintiff's exception 5 is therefore denied.

## PLAINTIFF'S EXCEPTION 6

*The master erred in failing to require defendant/husband to pay 100 percent of the QDRO preparation fee.*

Plaintiff's sixth exception also alleges that the master erred by requiring her to pay a portion of the QDRO preparation fee.

Wife's argument is based on the same assertions set forth in her fourth and fifth exceptions, which consistently argue that the vast difference in the parties' income and earning potential results in the master's division of responsibility for the QDRO preparation fee being unfair.

A review of the master's recommendation and the applicable record indicates that husband's employer will charge $300.00 to review a qualified domestic relations order. Consequently, the master portioned the responsibility of this cost in the same manner in which the master's fees were allotted. Specifically, husband is responsible for $200, and wife is responsible for $100. In making this recommendation, the master's rationale was consistency with the apportionment of the master's fees.

The court finds this distribution of costs to be appropriate for the reasons set forth in plaintiff's exception 5. Plaintiff's exception 6 is therefore denied.

## PLAINTIFF'S EXCEPTION 7

*The master erred in failing to value the defendant/husband's 1999 Toyota Tacoma at $8,000.*

Plaintiff's last exception takes issue with the valuation of a 1999 Toyota Tacoma purchased by the parties prior to separation. Husband retained possession of the Tacoma after separation and sold it shortly thereafter; the money received for the Tacoma was used by husband to purchase a 2002 Toyota Tundra. At the master's hearing, husband was unable to recall the specific amount he received for the Tacoma, but testified that he financed $8,500 for the remaining balance on the Tundra. The master concluded that the Tacoma had a marital value of $5,000.

Wife asserts that during the master's hearing, the only evidence presented in regards to the value of the Tacoma came from wife. Wife testified that within months of husband purchasing the Tacoma, he listed it for sale for the amount of $16,500. Wife argues in her exception that if husband was seeking $16,500 for the Tacoma, and he only financed $8,500, the remaining balance of $8,000 must have come from the sale of the Tundra.

During the master's hearing, wife's counsel tried to present this same argument by way of wife testifying to the facts set forth above. (N.T. Oct. 28, 2010, pps 145-146) Although the master allowed the testimony to come in over the objections of husband's counsel, the master clearly indicated that wife's testimony regarding the listed sale price of the Tundra was "not dispositive" of the Tacoma's actual value. (N.T. Oct. 28, 2010, p. 146.)

The master's indication is correct. Although there is no specific method for valuing marital assets, a trial court is

free to accept all, none or portions of testimony presented by the parties regarding the value of marital property. 23 Pa.C.S. § 3501(c); *Verholek v. Verholek*, 741 A.2d 792 (Pa. Super. 1999).

The court finds that wife's argument presents no real evidence for this court to circumvent the findings of the master. The fact that husband listed the Tundra for $16,500 is not dispositive of the actual amount he received for the Tacoma, even if this court considers the amount needed to finance the remaining balance. For instance, it could have been husband's intention to list the Tundra for a higher value than he was willing to receive to allow for room to bargain. Additionally, no evidence was presented as to the amount husband actually received for the Tacoma.

In accordance with the discussion set forth above, plaintiff's exception 7 is denied.

## DEFENDANT'S EXCEPTION 1

*The master erred in awarding plaintiff/wife 57.5 percent of the marital assets.*

Husband's first exception argues that the master erred in not giving the appropriate weight to various facts such as the custody arrangement between the parties, wife's current earning potential and employment status, prior distributions of assets made to the parties, and husband's age and medical needs.

The Domestic Relations Code does not dictate the weight to be placed on each of the criteria set forth in 23 Pa.C.S. §3502, which is within the sole discretion of the trial court. *Sergi v. Sergi*, 506 A.2 928 (Pa.Super. 1986).

The court finds that the master specifically addressed these factors in his report and recommendations. Furthermore, the court finds the master's review and discussion of each of the statutory factors to be an appropriate and accurate review of the circumstances pertaining to this case. The Domestic Relations Code does not dictate the weight to be placed on each of the criteria set forth in 23 Pa.C.S. §3502, which is within the sole discretion of the trial court. *Sergi v. Sergi*, 506 A.2 928 (Pa.Super. 1986).

Additionally the court notes that there is no presumption of an equal 50/50 distribution of marital property. In fact, a court may not use 50/50 as a starting point for its analysis, as doing so requires a court to make improper presumptions outside of its discretion. *Frataneelo v. Fratangelo*, 520 A.2d 1195 (Pa.Super.1987).

For the reasons previously set forth above, defendant's exception 1 is denied.

## DEFENDANT'S EXCEPTION 2

*The master erred in requiring defendant/husband to pay $1,800 of plaintiff/wife's attorney's fees.*

The court's discussion of defendant's exception 4 is primarily set forth in plaintiff/wife's exception 4. Additionally, however, the court would like to address a portion of husband's exception 4, which argues that wife's award of alimony pendent lite was significant and more than enough to cover the $6,044.51 in attorney's fees incurred by wife.

In disposing of this portion of husband's exception, the court notes that wife paid additional attorney's fees for litigation surrounding custody of the parties' children

and divorce proceedings. During argument on exceptions from the report of the master, husband contended that it was improper for the master to require husband to pay any portion of wife's attorney's fees as this cost was sufficiently covered by her alimony pendete lite award. Considering that the APL award was surely utilized for all litigation initiated by the parties, and not just the equitable distribution proceedings, the court finds husband's argument to be without merit.

Defendant's Exception 2 is therefore denied.

## DEFENDANT'S EXCEPTION 3

*The master erred in requiring defendant/husband to pay two-thirds of the QDRO preparation fee.*

Defendant's third exception contends that the master erred by requiring husband to pay two-thirds of the master's fees. Husband's argument is based on his assertion that the master's overall division of marital assets is inequitable. Husband further argues that a more appropriate equitable distribution should reflect a 50/50 division of marital assets.

The court will again remind husband that it is improper to presume an equal 50/50 distribution of marital property. *Fratangelo*, supra. Additionally, the court believes husband's exception to be without merit after considering the master's overall recommendation and the fact that this court has determined said recommendation to be an appropriate and fair distribution of marital assets.

Defendant's Exception 3 is therefore denied.

## DEFENDANT'S EXCEPTION 4

*The master erred in requiring defendant/husband to pay two-thirds of the master's fees.*

Defendant's fourth exception contends that the master erred by requiring husband to pay two-thirds of the master's fees. Husband's argument again correlates with his assertion that the master's overall division of marital assets is inequitable and that a more appropriate equitable distribution should reflect a 50/50 division of marital assets.

As previously stated in plaintiff's Exception 5, the master's recommendation indicates that the total balance due for master's fees is $2,375.00. Husband was required to pay 66 2/3 percent or $1,583.33. Wife was required to pay 33 1/3 percent or $791.67. The master recommended this division of costs "[b]ased upon all considerations of equitable distribution and costs analysis."

The court finds the master's distributions of the master's fees to be appropriate and well reasoned.

Defendant's Exception 4 is therefore denied.

## DEFENDANT'S EXCEPTION 5

*The master erring by using the full value of defendant/ husband's 401k plan for the purposes of equitable distribution.*

Marital property means all property acquired by either party during the course of marriage and prior to the date of final separation. 23 Pa.C.S. §3501(a). There is a presumption that property acquired by either party during the marriage is marital property, unless it is proved by a preponderance of evidence that the property is excluded under §3501(a). 23 Pa.C.S. §3501(b); *Drake v. Drake*, 555

Pa. 481, 725 A.2d 717 (Pa. 1999); *Mackalica v. Mackalica,* 716 A.2d 653 (Pa.Super. 1998).

Husband's 401k plan had a value of $78,361.54 at separation. The master used this figure for the purposes of equitable distribution. The court is inferring from husband's fifth exception that husband contends a portion of this amount is non-marital because husband opted into the pension plan prior to being married. Evidence was presented at the master's hearing to establish that husband has been employed by First Energy since October 16, 1991. Husband admits, however, that he did not initially contribute to the 401k plan, as doing so was optional, he opted into it "a year or two after I was employed there." N.T. Oct. 28, 2010, pps 126. The court can infer from husband's testimony that he began contributing to his 401k plan some time between October of 1992 and October of 1993, approximately one to two years before the parties were married on May 14, 1994. However, husband has failed to present any evidence to support his assertion.

The court determines that the master properly used the sum of $78,361.54 for equitable distribution. Husband has not established a specific date that both the master or the court can use to establish what portion of the 401k plan is marital property, and the court finds that any amount, which husband may have contributed to the 401k plan prior to the parties being married, is de minimus.

Defendant/husband's exception 5 is therefore denied.

## DEFENDANT'S EXCEPTION 6

*The master erred in not giving defendant/husband credit in equitable distribution for making payments in the sum of $5,360.00 towards a $30,000 loan on defendant/*

*husband's 401k plan.*

The basis of husband's sixth exception relates to a loan obtained from husband's 401k plan in the amount of $30,000. The parties used this loan towards a down payment for a residence at 313 North Market Street, New Wilmington, Pennsylvania in July of 2003. The parties lived together at this residence until January 2005, when husband moved out. Shortly thereafter, in August, wife left the residence and husband subsequently moved back in.

The residence was later sold on August 12, 2008. The proceeds from the sale, $70,119.50, were placed in escrow with PNC Bank. The proceeds were escrowed in their entirety because wife objected to husband satisfying the remaining balance of the $30,000 loan from his 401k. Consequently, husband was forced to continue making weekly payments of $46.61, for a total of $5,360.00.

Husband now asserts that the master erred in his determination that due to the date used for purposes of valuation of husband's 401k, it was not necessary to credit husband with $5,360.00 for payments he made on the 401k loan. A review of the master's report indicates that any payments made to the 401k loan, including interest, are directly credited to husband's 401k plan, and the principle value of the plan subsequently increases. The master assessed the value of husband's 401k from the date of separation and determined it to be worth $49,387.91. The master determined that if the date of separation was used for assessing the marital portion of husband's 401k, husband would receive the benefit of any subsequent payments made by him, specifically the $5,360.00, as any post separation payments would subsequently increase the non marital portion of the 401k, which was not used for

the purposes of equitable distribution. Additionally, the master required that the outstanding loan balance be repaid resulting in husband's 401k increasing in portion to the loan balance. The amount owed on the loan, $28,973.63, was also determined from the date of separation.

In disposing of husband's sixth exception, the court notes that a trial court may grant full credit, partial credit, or no credit at all for a spouse's post-separation payments of joint debts if the payment is made voluntarily from his or her income or separate assets. *Diament v. Diament*, 816 A.2d 256 (Pa. Super. 2003)(contrast with *Duff v. Duff,* 510 Pa. 251, 507 A.2d 371 (Pa. 1986), holding that a spouse is entitled to full credit for his or her post-separation payment of joint debt, *if the payment is made from marital funds)* (emphasis added).

Two figures were utilized to determine the marital portion of husband's 401k: 1) the balance as of the date of separation, $49,387.91; and 2) the balance of the loan as of the date of separation, $28,973.63. The two figures amount to a total valuation of $78,361.54. Husband argues that he was not given credit for payments made to the 401k loan after the parties separated; the court, however, disagrees. The master required that the balance of the loan at the time of separation be paid off. This action results in husband retaining any value contributed to his 401k after separation including the $5,360.00. Any subsequent payments by husband are secured in the non-marital portion of his 401k and not subject to equitable distribution.

Defendant's Exception 6 is therefore denied.

## DEFENDANT'S EXCEPTION 7

*The master erred in not giving defendant/husband*

*credit in equitable distribution for payments defendant/ husband made on a loan associated with a 1999 Dodge Caravan in the amount of $2,756.05 and payments made on a Master Card in the amount of $824.08.*

A review of the master's recommendation indicates that the master assessed the Dodge Caravan a marital value of $3,500. Wife retained the Caravan after separation although husband paid off the balance of the vehicle in the amount of $2,756.95. Husband believes that the master failed to give him credit for paying the remaining balance on the vehicle.

The court finds husband's complaint to be without merit. In 2009 the value of the Caravan was $1,200. When wife later traded in the Caravan towards the purchase of a newer vehicle, she received $700. Master, however, valued the Caravan at $3,500 and credited this amount to wife's portion of marital assets previously distributed. It is the determination of this court that master, in assessing the Caravan at a considerably higher value than its actual value and assigning the increase in value to wife's distribution amount, did in fact give husband credit for the $2,756.95 he expended towards paying of the vehicle. If the court subtracts $700 (actual value) from $3,500 (value assessed by master) the balance is $2,800. If the court would evaluate these figures in a very precise matter, the result would be that husband actually received an additional credit of $43.05 that he was not owed.

The second portion of husband's seventh exception argues that the master failed to credit husband with payments made by husband on a Master Card in the amount of $824.08. On page 33 of the master's report it indicates that, "[t]he master acknowledges that husband has made

the payments of marital property expenses following separation." Included in the list is husband's payment of $824.08 for the Master Card. The master further notes that this payment was considered in setting the recommended award to wife of 57.5 percent, "as opposed to a greater percentage." *Id.* The court finds that the master did properly consider the payments made by husband, and husband received credit in this respect.

Defendant/husband's Exception 7 is therefore denied.

## DEFENDANT'S EXCEPTION 8

*The master erred in valuing the Husqvrana zero turn riding mower at $2,000 and the Honda push mower at $200.*

Husband's eighth exception contends that the master erred in his valuation of lawn equipment purchased by the parties prior to separation. Husband first avers that the Husqvrana zero turn riding mower (hereinafter "riding mower") is more properly valued at $1,100.00, as this was the amount he received when he sold it after the parties were separated.

The Divorce Code does not contain a specific method for valuing marital assets (with the exception of defined benefit retirement annuities). 23 Pa.C.S. § 3501(c). A trial court may consider estimates, inventories, records of purchase price and appraisals submitted by the parties, and a court is free to accept all, none or portions of the testimony regarding value. *Verholek v. Verholek,* 741 A.2d 792 (Pa.Super. 1999). Additionally, it is not outside a court's discretion to average values given by the parties or their appraisers. *Aletto v. Aletto,* 537 A.2d 1383 (Pa. Super. 1988).

The parties purchased the riding mower in 2003 for $4,300.00; husband later sold the riding mower for $1,100.00. Although the measure of personal property is typically fair market value in most divorce cases, using such a value is more appropriate where neither a buyer nor a seller is under a compulsion to buy or sell the property in lieu of the ongoing circumstances relating to individual cases. Husband testified that he sold the riding mower because he needed the money. (N.T., Oct. 28, 2010 p. 104) In light of these circumstances, the court finds that the master did not err in valuing the riding mower at a higher value than what it was sold for by husband. The court believes that the master's value is a more accurate reflection of the riding mower's fair market value.

With respect to the defendant's contention that the master erred in his valuation of the Honda push mower at $200. Testimony was presented at the equitable distribution hearing established that the push mower, which is not currently running, was recently valued at $125.00. The push mower would be worth $250.00, however, if it were operating. The court finds that the master's valuation is appropriate because, although the push mower is currently not operable, it has the ability to be repaired (at some cost to husband). The court determines that the master correctly factored in the approximate costs of repairs and decreased the push mower's value accordingly.

In accordance with the discussion set forth above, defendant's exception 8 is denied.

## DEFENDANT'S EXCEPTION 9

*The master erred in valuing the $30,000 401k plan loan payoff amount at $28,973.63.*

Husband's last exception asserts that the master erred in valuing the $30,000 loan payoff amount at $28,973.63. In his brief to the court, husband argued that evidence was presented at the equitable distribution hearings, that as of June 11, 2010, the payoff value was $22,848.21.

The court finds husband's last argument to be without merit. The master properly selected the date of separation for determining the balance owed on the $30,000 loan from husband's 401k. The court believes that, consistent with the court's discussion and disposition of defendant's exception 6, using the date of separation to determine the balance of the 401k loan is necessary to effectuate an equitable distribution of this specific marital asset.

Defendant's exception 9 is therefore denied.

### ORDER OF COURT

And now, March 1, 2011, with this matter being before the court on February 15, 2011 for argument on exceptions to the master's report and recommendations filed on behalf of each party, and with Anthony S. Piatek, Esquire, appearing and representing the plaintiff, Sharon A. Wynder and with Shawn A. Sensky, Esquire, appearing and representing the defendant, Wilbur H. Wynder, III, and the court having fully considered the arguments presented by counsel and having completed a thorough review of the record in this case, it is hereby ordered and decreed as follows:

1. Plaintiff's exception 1 is denied.

2. Plaintiff's exception 2 is denied.

3. Plaintiff's exception 3 is denied.

4. Plaintiff's exception 4 is denied.

5. Plaintiff's exception 5 is denied.

6. Plaintiff's exception 6 is denied.

7. Plaintiff's exception 7 is denied.

8. Defendant's exception 1 is denied.

9. Defendant's exception 2 is denied.

10. Defendant's exception 3 is denied.

11. Defendant's exception 4 is denied.

12. Defendant's exception 5 is denied.

13. Defendant's exception 6 is denied.

14. Defendant's exception 7 is denied.

15. Defendant's exception 8 is denied.

16. Defendant's exception 9 is denied.

17. The court hereby adopts and incorporates herein all provisions of the proposed order of court as contained in the master's report filed December 8, 2010.

18. The court retains jurisdiction to enforce this order and to effectuate justice between the parties.

19. The prothonotary shall properly serve notice of this order upon counsel of record for the parties.