Max H. HOMER, Petitioner,

v.

**PUBLIC SCHOOL EMPLOYES'
RETIREMENT BOARD,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 13, 1997.

Decided April 14, 1997.

Peter J. King, Pittsburgh, for petitioner.

David W. Speck, Harrisburg, for respondent.

Before McGINLEY and FLAHERTY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

This appeal presents the issues of: 1) whether the Public School Employes' Retirement Board (Board) erred in concluding that a Public School Employes' Retirement System's (PSERS) multiple service member[1] who reaches superannuation age in one system may be deemed to have reached it in another for purposes of calculating PSERS eligibility for disability benefits; and 2) whether the Board properly determined Max H. Homer's (Homer) age for purposes of calculating disability under the PSERS.[2]

Homer appeals from the order of the Board which denied Homer's request for a disability annuity as a multiple service member.

Homer first became a member of the PSERS from January 1959 through January 1965 as a teacher for Stowe Township School District (Stowe District). In December of 1964, he was elected to the Legislature where he became a member of the State Employes' Retirement System (SERS). At his request his account was credited with multiple service based on his prior employment with Stowe District.[3]

After his legislative service, Homer worked briefly for Sto–Rox School District where he reinstated his membership in PSERS. He then returned to teaching for the Pittsburgh Public Schools (Pittsburgh Schools) from August 1980 until he retired in June of 1988. At age 51, Homer was granted a two-year sabbatical leave for health reasons from June 30, 1986 through June 30, 1988. His last date of service with Pittsburgh Schools was June 17, 1988.

1. Multiple service is defined in the Public School Employee Retirement Code (School Retirement Code) as "credited service of a member who has elected to combine his credited service in both the Public School Employes Retirement System and the State Employes' Retirement System." 24 Pa.C.S. § 8102.

2. An issue of whether Homer's disability pension should be subject to a cap was briefed but not considered by this Court because it was not properly preserved for appeal nor ripe for adjudication.

3. Homer accrued class D–3 membership as a member of the Legislature. Class D–3 service is available to Legislators and provides three unique benefits over class A or regular state employee membership: (1) members receive a service multiplier of 3.75, rather than 1, which allows a member to receive a benefit 375% larger than a regular state employee; (2) members receive one and two-thirds eligibility points for each year of service, rather than one, which allows such members to vest at six years instead of ten for regular state membership; and (3) members superannuate at age 50, rather than age 60 for regular members (or age 62 for PSERS members), which allows such members to retire at that age without a reduction in benefits.

In May 1988, PSERS received an application for disability retirement from Homer and approved a one-year temporary disability benefit. One month later, PSERS reversed its decision. It informed Homer that he had become ineligible for disability benefits upon reaching superannuation at age 50. Although it agreed that the superannuated age under the PSERS was 62 years of age, because Homer was a multiple service member, the PSERS had applied the earlier of the two superannuation ages. Consequently, Homer had attained the superannuation age of 50 years under the SERS before his disability and was therefore deemed superannuated under PSERS as well.

■ Homer appealed, arguing that his disability had occurred at age 51 while he was employed by Pittsburgh Schools and a member of the PSERS and the PSERS superannuation age should therefore apply. The appeal was denied. He requested and was granted an administrative hearing in March of 1993. Consistent with the recommendation of the hearing officer, the Board also denied Homer's request for disability annuity on June 21, 1996. Homer appeals.[4]

■ Homer argues that the PSERS policy of applying the earlier superannuation of the SERS system is an age-based distinction prohibited by the Age Discrimination in Employment Act of 1967,[5] *as amended* by the Older Workers' Benefit Protection Act.[6] He argues that Section 623(a) of the ADEA prohibits an employer from discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of age, and the passage of the OWBPA, Section 623(f)(2) of the ADEA now requires the state to demonstrate that such age-based distinctions in regard to a disability annuity are justified by age-related costs considerations. We do not agree.

In 1990, Section 623(f)(2) of the ADEA was amended by the OWBPA to override the U.S. Supreme Court decision in *Public Employees Retirement System of Ohio v. Betts,* 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), which held that an employee seeking to challenge a benefit plan under Section 4(f)(2) of the ADEA had the burden of proving that the plan actually was intended to discriminate in violation of the ADEA. However, those amendments codified in OWBPA were given prospective effect from October 1990.[7]

■ In the instant case, relevant sections of the PSERS and SERS Retirement Codes underwent several changes to the multiple service provisions between the 1959 State and School Retirement Codes (Retirement Codes)[8] and the amended 1974 State and 1975 School Retirement Codes[9] and the policy at issue is derivative of those amendments. Because these amendments occurred prior to the effective date of the OWBPA, we conclude that we are bound by the United States Supreme Court's decision in *Betts.* Nonetheless, because the pension plan at issue in this case, like the plan in *Betts,* was amended after the ADEA was made applicable to public employers,[10] it is not automatically protected from scrutiny, and the modifications may subject the plans to challenges that they were designed as a subterfuge. *Id.*

4. On review of final adjudication of an administrative Board, the Board is the fact-finder and our scope of review is limited to determining whether the Board committed an error of law, constitutional rights were violated, or the Board's factual findings were supported by substantial evidence. *Dowler v. Public School Employes' Retirement Board,* 153 Pa.Cmwlth. 109, 620 A.2d 639 (1993).

5. Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634, *as amended,* 29 U.S.C. § 21 *et. seq.*

6. Older Workers' Benefit Protection Act (OWBPA), Publ. L. 101–433, 104 Stat. 978 (October 16, 1990).

7. Pub.L. No. 101–433 @104, 104·Stat. 978, 981 (October 16, 1990) (*as amended* by Pub.L. No. 101–521, 104 Stat. 2287 (November 5, 1990).

8. *See* 24 P.S. §§ 3401(1.1), 3405(2.1); and 71 P.S. §§ 1725.401(1.1), 1725.405 of 1959.

9. *See* 24 Pa.C.S. §§ 8102, 8305, 8307(c); and 71 Pa.C.S. §§ 5102, 5307, 5308(c).

10. The ADEA was enacted in 1967 and became applicable to public employers in 1974, after the United States Supreme Court's decision in *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), Pl 93–259, at 28(a)(2), codified at 29 U.S.C. at 630(b).

As a threshold matter, we must therefore determine whether the modifications transform the plan into a subterfuge to evade the purposes of the ADEA. *Id.* In doing so, the burden of production is upon Homer. *Id.*

The United States Court of Appeals for the Third Circuit has concluded that post-ADEA modifications may convert a benefit plan into subterfuge only if they are "significant or at least relevant to the challenged discriminatory practice." *EEOC v. Westinghouse Electric Corporation*, 925 F.2d 619 (1991). Once it is established that the relevant modifications to the pension plan meet this threshold requirement, Homer must further establish that these modifications were intended as a subterfuge.

*Betts* has established several conclusions regarding the precise meaning of "subterfuge" under Section 4(f)(2) of the ADEA. The decision in *Westinghouse* provides a concise and instructive summary of these factors:

> First, it reaffirmed its holding in *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977), that an employee plan adopted prior to the enactment of ADEA cannot be a subterfuge. 492 U.S. at 166–68, 109 S.Ct. at 2861. The Court noted, however, that to the extent a post-ADEA provision of a plan "increased the age-based disparity caused by the pre-Act age limitation, *McMann* does not insulate it from challenge."
>
> Second, the Court reiterated its statement in *McMann* that " 'subterfuge' means 'a scheme, plan, stratagem, or artifice of evasion,' which, in the context of § 4(f)(2), connotes a specific 'intent . . . to evade a statutory requirement.' " *Id.* at 171, 109 S.Ct. at 2863 (quoting *McMann*, 434 U.S. at 203, 98 S.Ct. at 450).
>
> Third, the Court noted that a post-Act plan cannot be a subterfuge unless "it discriminates in a manner forbidden by the substantive provisions of the Act." *Id.* 492 U.S. at 176, 109 S.Ct. at 2865–66. Noting that any benefit plan that discriminates against older workers would violate § 4(a)(1) (employers prohibited from discriminating on the basis of age with respect to compensation, terms, privileges of employment), the Court stated that both § 4(a)(1) and § 4(f)(2) could be given effect only if § 4(f)(2) is viewed as exempting bona fide benefit plans that are not "a method of discriminating in other, nonfringe-benefit aspects of the employment relationship." *Id.* at 177, 109 S.Ct. at 2866 (citing 29 U.S.C. § 623(a)(1), (f)(2)). The Court did not define "nonfringe benefit" but its use of the term makes clear that the terms "bona fide employee benefit plan" and "nonfringe benefit" are mutually exclusive. See *Id.* at 172–73, 175–77, 109 S.Ct. at 2864, 2866.
>
> Fourth, the Court stated that § 4(f)(2) does not establish a defense to liability under ADEA; rather, the section "redefines the elements of plaintiff's prima facie case." *Id.* at 181, 109 S.Ct. at 2868. Thus, an employee who challenges a provision of a benefit plan under ADEA "bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some nonfringe-benefit aspect of the employment relation." *Id.* at 181, 109 S.Ct. at 2868.

*Id.* at 623.

■ In the present case, the relevant modifications to the Retirement Code resulted in some ambiguity over which superannuation age to use in determining a multiple service members' eligibility for disability benefits. Because the Retirement Codes, as amended, did not contain all of the administrative detail necessary to compute the multiple service benefit in question, the Board was at liberty to construe the statute to effectuate the purposes of the statute, and its construction was entitled to considerable deference unless clearly erroneous. *Laurito v. Public School Employes' Retirement Board*, 146 Pa.Cmwlth. 514, 606 A.2d 609 (1992).

The record indicates that the SERS considered two interpretive schemes to calculate multiple service benefits before reaching its decision as to which to adopt.[11] The first

---

**11.** Because Homer has chosen to narrow his ADEA-based challenges to attacks upon the poli-

cy adopted to implement the amendments, rather than the actual amendments themselves, our re-

interpretation adopted the 1959 Retirement Code methods of calculating separate benefits which are then combined and paid by the system from which the member is retiring, and wherever those codes omitted an aspect of multiple service or were ambiguous on an issue otherwise provided for under the 1959 Retirement Codes, it carried forward the 1959 Retirement Code provisions by implication.

The second interpretation considered gave literal interpretation to the amended Retirement Codes so that only those provisions specifically mentioned in the amended Retirement Code would be recognized and the multiple service employee received his benefit totally under the terms and conditions of the system from which he retired.

The PSERS exercised its judgment and chose the former, adopting the superannuation provisions contained in the 1959 Retirement Codes where necessary. It is clear from the record that the chosen interpretation was directed at maintaining the status quo while maintaining the integrity of both retirement systems; the record indicates that Homer would have experienced the same result under the 1959 Retirement Code as he experienced under the post-modification Retirement Code as interpreted by the PSERS. We therefore conclude that the relevant modifications were not significant, and the Board was correct in deferring to the discretion of the PSERS.

Even had Homer succeeded in meeting this initial threshold, the record is devoid of testimony or evidence of any of the requisite willful intent to discriminate as required under *Betts*. We find no evidence that the modifications "increased the age-based disparity" nor any evidence of a scheme, plan, stratagem, or artifice of evasion in the context of Section 4(f)(2) of the ADEA. Whereas the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discrimination in a manner forbidden by the substantive provisions of the Act fell upon Homer, and he has clearly not met this burden, we find no violation of the ADEA.

▮ Finally, Homer has disputed the Board's finding that he was 51 years of age when his disability occurred. He alleges that his condition actually began in 1983 when he was hospitalized for a month and argues that because he worked only part-time after that incident and was forced to eventually take a two-year health related sabbatical before retiring, the PSERS should have established his disability at its onset in 1983 when he was age 48. We do not agree.

On October 27, 1988, the PSERS medical staff made a disability determination in accordance with Section 24 Pa.C.S. § 8307(c) [12] and § 8505(c)(1) [13]. In making its determination, the PSERS had considered Homer's own admission that the disability occurred

---

view will be limited to those matters contained or reasonably inferred from the record.

12. Then 24 Pa.C.S. § 8307(c), *as amended* 1985, June 13, P.L. 40, No. 19, § 1 provided:

(c) **Disability annuity.**—An active or inactive member who has credit for at least five years of service shall upon filing of a proper application, be entitled to a disability annuity if, prior to attainment of superannuation age, he becomes mentally or physically incapable of continuing to perform the duties for which he is employed and qualifies for an annuity in accordance with the provisions of Section 8505(c)(1) (relating to duties of board regarding applications and elections of members).

13. 24 Pa.C.S. § 8505(c)(1), *as amended* 1985, June 13, P.L. 40, No. 19, § 1.:

(c) **Disability annuities.**—In every case where the board has received an application for dis-

ability annuity based upon physical or mental incapacity for the performance of the job for which the member is employed, the board shall:

(1) Through the medical examiner, have the application and any supporting medical records and other documentation submitted with the application reviewed and, on the basis of said review and the subsequent recommendation by the medical examiner regarding the applicant's medical qualifications for a disability annuity along with such other recommendations which he may make with respect to the permanency of disability or the need for subsequent reviews, make a finding of disability or nondisability and, in the case of disability, establish an effective date of disability and the terms and conditions regarding subsequent reviews.

when he was 51 years of age [14] and the fact that he continued working, on at least a part-time basis, until he took a health related sabbatical in 1988.[15] Whereas there was substantial evidence in the record to support the Board's finding as to Homer's age at the time of disability, we therefore affirm.

For the aforementioned reasons we affirm.

### ORDER

AND NOW, this 14th day of April, 1997, the order of the Public School Employes' Retirement Board in the above-captioned matter is hereby affirmed.

14. Homer requested an appeal of the PSERS decision by letter on November 25, 1989. In support of his appeal, Homer sent a letter to PSERS in which he stated, "I am disabled. The disability occurred at age 51 while I was a full time employee of the Pittsburgh School District."

15. According to the record, Homer's health-related sabbatical ran from June 30, 1986 to June 30, 1988 and his last date of service was June 19, 1988. He became 51 years of age on May 20, 1985, well before either of these occurrences.