**Rannels v. Rannels.**

*Allan R. Kauffman,* for plaintiff.
*Eric C. Diggan,* for defendant.

LASH, *J.,* February 20, 2013—The matters before this Court are the Exceptions filed by both parties to the Report and Recommendations of the Divorce Master, dated June 14, 2012. In his report, the master made findings on equitable distribution, alimony, counsel fees, costs and expenses.

The parties were married on May 23, 1970 and separated on November 14, 1998. Plaintiff, Carol A. Rannels (hereinafter "ex-wife"), filed the within divorce action on January 20, 2004.[1] Defendant, Lynn L. Rannels (hereinafter "ex-husband"), then requested that the action be bifurcated, which was granted on November 30, 2004. A decree in divorce was then entered on February 3, 2005, pursuant to section 3301(d) of the Divorce Code.[2] No action on the ancillary claims were taken until November 12, 2010 when ex-wife moved for appointment of a master. The master was appointed and conducted a hearing on the issues of distribution of property, support, alimony, counsel fees, costs and expenses on March 19, 2012.

Ex-husband was 67 years old at the time of the hearing,

---

1. Defendant, Lynn L. Rannels (hereinafter "ex-husband"), had filed a previous divorce action in Cameron County on September 24, 2001 resulting in a judge of that county entering a decree in divorce on May 28, 2002. However, ex-wife, claiming she had no notice of the Cameron County action, filed a motion to vacate the decree, which was granted by the Cameron County Court on December 11, 2003.

2. 23 Pa.C.S.A. §3301(d).

a former school teacher in the Wilson School District. He separated from his employment with the school district in June of 2000 and applied for disability retirement benefits under the Public School Employees' Retirement System (hereinafter "PSERS"), due to significant hearing impairment and heart related issues. He began receiving monthly payments in the amount of Three Thousand one Hundred Sixteen Dollars and Ninety-Six Cents ($3,116.96). He also receives social security retirement benefits in the amount of one Thousand Two Hundred Sixty-Four Dollars and Thirty Cents ($1,264.30), for a total current monthly income of Four Thousand Three Hundred Eighty-One Dollars and Twenty-Six Cents ($4,381.26) per month.

Ex-wife, age 65 at the time of the hearing, also has a degree in education, but worked only sporadically. She was employed in the Wilson School District from 2005 to 2008 in the Alternative Education Department, being paid Ten Dollars ($10.00) per hour for thirty-two (32) hours of work. Ex-wife is currently unemployed, relying on an inheritance for her needs, also receiving financial help from her son. The parties are also owners of a commercial real estate property located in Brecknock Township which they utilize for a water dispensing facility.

The Court of Berks County has adopted the procedures set forth in Pa.R.C.P. 1920.51 permitting divorce hearings to be heard by a master appointed by the Court. Under this procedure, the master conducts a hearing and is the fact finder for disposition of ancillary economic claims, among other things. Under Pa.R.C.P. 1920.55-2, either party may file exceptions to the master's report within twenty (20) days, which is then reviewed by the court. In making

its review, the Court shall give the master's report great weight, although it is the Court who ultimately has the responsibility for making the final determination. *Tagnani v. Tagnani*, 654 A.2d 1136 (Pa.Super. 1995). On issues of credibility, the master's findings must be given "the fullest consideration for it was the master who observed and heard the testimony and demeanor of various witnesses." *Anderson v. Anderson*, 822 A.2d 824, 830 (Pa.Super. 2003), citing *Schuback v. Schuback*, 412 Pa.Super. 233, 603 A.2d 194, 196 (1992).

In her exceptions, ex-wife claims that the master erred in determining that ex-husband's pension payments are disability related and, therefore, not a marital asset. The master found that the disability payments represent income to ex-husband, "income designed to replace income he lost when he was forced to retire due to his disability."[3] Ex-wife argues that the pension is a retirement pension and as such, the pension and payments received by ex-husband are marital property subject to equitable distribution. She cites *Ciliberti v. Ciliberti*, 542 A.2d 580 (Pa.Super. 1998), for the proposition when "a portion of the employee's spouses disability pension is representative of retirement benefits, the amount received by the disability employee in lieu of retirement benefits remains marital property subject to distribution." *Id.* at p. 582. In *Ciliberti*, the husband received a police disability pension, which, at least in part, may have been received in lieu of a retirement pension. While the Divorce Code does not specifically address whether police disability payments can be

---

3. Master's Report and Recommendation, tenth page.

deemed non-marital, the Superior Court found that it would be consistent to determine the pedigree of any type of disability payments in the same manner as the Divorce Code treats veteran's disability pay. The Divorce Code sets forth at 23 P.S. §401(e)(6)[4] that veteran's benefits are not marital property "except for those benefits received by a veteran where such veteran has waived the portion of his military retirement pay in order to receive veteran's compensation."

Ex-husband's pension is administered by PSERS under the Public School Employees' Retirement Code (hereinafter "PSER Code").[5] Under the terms of the PSER Code, an employee is eligible for retirement benefits upon reaching "superannuation or normal retirement age," which, depending upon his class of service and eligibility points, may be anywhere from age 60 to 65. As of the date of the hearing, Ex-husband had reached superannuation.[6]

Ex-husband's separation from Wilson School District in 2000 was due to his physical incapacities. The monthly payments he began receiving were clearly disability payments. Once ex-husband reached superannuation, however, he became eligible for retirement payments. This eligibility arguably rendered the purpose for the disability payments, to supplant lost income otherwise unavailable, moot.[7] Under the *Ciliberti* analysis, any continuation of

_____

4. 23 P.S. § 401(e)(6) has now been replaced by 23 Pa.C.S.A. § 3501(a)(6).

5. 24 Pa.C.S.A. § 8101, et seq.

6. According to correspondence sent by PSERS dated January 16, 2001 (Defendant's Exhibit 30), Ex-husband reached superannuation at age 62 in 2007.

7. This Court cannot determine through the record whether ex-husband's retirement payments would be identical to his disability

disability payments post-superannuation would be in lieu of retirement benefits. As the retirement benefits would be considered marital assets subject to equitable distribution, the disability payments post-superannuation would also be deemed marital property.

In a similar vein, ex-husband could be determined to be "ineligible" for continuation of disability benefits due to his eligibility for retirement benefits. In *Homer v. Public School Employes' Retirement Board*, 692 A.2d 632 (Pa.Cmwlth. 1997), the Pennsylvania Commonwealth Court affirmed an order of the Public School Employes' Retirement Board finding that the employee was ineligible for disability benefits because he reached superannuation prior to becoming disabled.[8]

This Court finds that disability payments received by ex-husband from the time of separation from his employment to the date of superannuation are non-marital property. In making this determination, this Court is cognizant of the Pennsylvania Supreme Court's holding in *Drake v. Drake*, 555 Pa. 481, 725 A.2d 717, at 723-724 (1999), where the court stated that, contrary to the intimations of the Superior Court in *Ciliberti*, disability payments are not "per se excluded from the definition of marital property."[9] Nevertheless, if ex-husband had not

---

payments. He appears to qualify for a standard single life disability annuity under 24 Pa.C.S.A. §8344. As such, ex-husband may receive the same monthly payments as enjoyed under the maximum single life annuity provisions set forth in 24 Pa.C.S.A. §8342. On remand, the master shall receive evidence and make a finding to resolve this question.

8. Under §8344 of the PSER Code, 24 Pa.C.S.A. §8344, the PSERS board has authority to make a determination to end disability payments if an employee is no longer eligible for the disability annuity.

9. The Supreme Court noted that the divorce code speaks only to

become disabled and had continued working, any salary he earned would be considered income and would not be marital property. The disability payments he received from the time of separation from Wilson High School until his superannuation replaced that loss of salary. It is appropriate to deem the replacement payments as income and non-marital.

Regarding payments received post-superannuation, it is not clear from the record whether the PSERS board made any determination regarding ex-husband's continuing eligibility to receive disability payments post-superannuation. Even assuming no such action took place, it is apparent that the disability payments received post-superannuation would be received in lieu of retirement benefits, not in lieu of earnings. Under the *Ciliberti* analysis, the payments are a substitution for marital assets and, therefore, should likewise be deemed marital assets. Accordingly, this Court rules that all payments received by ex-husband post-superannuation are deemed marital assets.

Ex-wife contests the master's conclusion that the value of ex-husband's pension is One Hundred Forty-Six Thousand Two Hundred Eighty-One Dollars and Forty-Four Cents ($146,281.44). Ex-wife believes that the marital portion of the pension should have been valued at Seven Hundred Twenty-Six Thousand Eight Hundred Thirty-Eight Dollars ($726,838.00) as of July 5, 2011,

---

veteran's disability payments. The Supreme Court's implication is that the Superior Court may have overreached in finding that the Divorce Code sufficiently addresses disability payments, as marital or non-marital, through an analogy to veteran's disability benefits.

based on an analysis provided by ex-wife's expert, "Pension Analysis Consultants."

In making his determination, the master relied upon documentation from PSERS to ex-husband setting forth the value of the retirement benefit to be One Hundred Forty-Six Thousand Two Hundred Eighty-One Dollars and Forty-Four Cents ($146,281.44), as of May 2, 2011. Also available to the master was an earlier offering from PSERS, dated January 16, 2004, listing a value at that time of Seventy-Two Thousand Three Hundred Fifty-One Dollars and Ninety-Two Cents ($72,351.92). The master found that the increase in the pension value from 2004 to 2011 was marital property, as ex-husband had made no contributions to the fund during that period. The master then applied the immediate offset method of distribution,[10] awarding ex-husband the full value of the pension of One Hundred Forty-Six Thousand Two Hundred Eighty-One Dollars and Forty-Four Cents ($146,281.44).

Before turning to the valuation issue, this Court notes a concern. In assigning the full value of the pension to ex-husband, the master did not apply the coverture fraction, required by 23 Pa.C.S.A. §3501(c). The parties' separation preceded ex-husband's separation from his employment. Thus, there may have been increases to the value of the pension resulting from efforts or contributions made by ex-husband after the parties' separation, which would be deemed non-marital, and would have to be subtracted to arrive at a value for the portion of the pension that is

10. 23 Pa.C.S.A. §3501(C)(2).

marital.[11]

The documents submitted by ex-wife from pension Analysis Consultants, Inc., are nothing more than a summary of certain pertinent figures, with a conclusion for "marital present value," of seven Hundred Twenty-Six Thousand Eight Hundred Thirty-Eight Dollars ($726,838.00). There was no testimony and there is no written documentation providing an adequate foundation for these figures. While a similar criticism can be levied against the PSERS documents submitted by ex-husband, PSERS is responsible for the oversight and administration of ex-husband's pension, and as such, its documents afford a greater indicia of reliability than the Pension Analysis Consultants, Inc.'s, documents. As the master's decision was limited to a review of the documentation without further proof, he was within his discretion in accepting the PSERS documentations and figures.

This case is remanded to the master for further proceedings consistent with this opinion. In reviewing the matter, the master may want to consider utilizing a deferred distribution method. It may be less cumbersome, considering the pension is now in pay status, with ex-husband receiving defined monthly payments to be terminated upon his death, and because the remaining estate is fairly modest. Also, the master did find it necessary to provide an income stream to ex-wife in the previous recommendation, which he handled through an alimony award.

---

11. On this issue and others, the master was saddled with a lack of evidence sufficient to make a competent ruling. On remand, adequate documentation from PSERS should be proffered.

Both parties filed exceptions to the master's resolution of the parties' commercial water business. Ex-wife contends that the master failed to consider that ex-husband has made and continues to make "substantial profits" from the water business, sharing none of those profits with ex-wife.[12] She also argues that he erred in the valuation of the business at Forty Thousand Dollars ($40,000.00).[13] Ex-husband likewise contests the master's valuation,[14] also arguing that the master erred in limiting ex-husband's award of the business to a "life estate," and was unfair in placing the value of the life estate on ex-husband's side of the asset ledger.

Since 1978, the parties ran a water vending business known as Crystal Springs located along Route 222, in Brecknock Township, Berks County. (N.T. p. 16). The business is situated on land jointly owned by the parties. (N.T. p. 22). Ex-husband testified the business is a sole proprietorship. (N.T. p. 206).

Crystal Springs consists of three (3) spring water wells and is open 24 hours a day. (N.T. p. 18). The water is dispensed through a coin operated vending machine which draws water from the wells. (N.T. p. 17). The original water machines have been replaced with dollar machines. (N.T. p. 17). Usually, ex-husband would collect the money from the machines and deposit it at a local bank. (N.T. pp. 18-19). The business revenue grew over time. For the period January to November 1999, Crystal Springs realized approximately Ninety Thousand Dollars

---

12. Ex-Wife's Exceptions 1, 2, and 6.
13. Ex-Wife's Exception No. 5.
14. Ex-Husband's Exception B.

($90,000.00) in gross receipts. (N.T. pp. 19, 41).

Ex-wife was assisting in the business and stopped working there in November 1999 when ex-husband gave her Three Hundred Dollars ($300.00) and told her he was retiring from Wilson School District and that she was not to return to the business, also suggesting that she obtain a teaching job. (N.T. p. 17). Ex-wife has received no money from the business since that time. (N.T. p. 22).

At a point in time post-separation, PennDOT reconstructed Route 222 adjoining the Crystal Springs property. As a result, the property no longer had access to highway frontage. To address this problem, ex-husband purchased a small parcel of land in February of 2008 from PennDOT for Three Thousand Five Hundred Dollars ($3,500.00), (N.T. pp. 130-131), purchasing the property with non-marital funds.

Ex-husband submitted a county tax bill for 2010 setting forth an assessed value for the Crystal Springs property of Twenty Thousand Six Hundred Dollars ($20,600.00). (N.T. p. 123). He said the County Tax Assessment Office "annexed" the parcel he purchased in 2008 to the adjacent Crystal Springs land and assessed both parcels as one property. (N.T. p. 133). There is no real estate appraisal in the record for the property but ex-husband opined that the 2010 assessed value is "accurate." (N.T. pp. 133-134).

Ex-husband presented a property insurance declaration page for the period of June 5, 2010 through June 5, 2011 showing an insured value of Ten Thousand Dollars ($10,000.00). (N.T. p. 124). He explained this policy insured the coin-vending machine located on the property.

The insured value has been consistent from the date of the parties' separation to the present. (N.T. pp. 124-125).

Ex-husband has closed two (2) of the three (3) wells on the site. One of these wells was closed because the Pennsylvania Department of Environmental Protection tested the water and subsequently required ex-husband to perform periodic testing, the cost of which he could not afford. (N.T. pp. 125-126). The remaining well is tested several times a year. (N.T. pp. 129-192).

Ex-husband testified that between 1988 and 2008 the business turned a profit "some of the years." (N.T. p. 191). However, the business had no profit for the last four (4) years. (N.T. p. 190). He believes the site has value as a commercial property because of highway access. (N.T. p. 193). He said the business, exclusive of the land, has no value because he cannot move it and it cannot be sold without the land. (N.T. pp. 193-194). Further, he opines that the only reason the property has value is due to the road frontage he purchased from PennDOT. (N.T. p. 207).

The master struggled with assigning a value to the business because of conflicting evidence and the lack of documentation. For instance, neither party placed into evidence Crystal Spring's bank records. Faced with these difficulties, the master valued the business at Forty Thousand Dollars ($40,000.00), representing the sum of the real estate assessed value, the value of the equipment which had been insured for Ten Thousand Dollars ($10,000.00), and the wages set forth in Schedule C of ex-husband's 2003 federal income tax return amounting

to Eight Thousand Two Hundred Dollars ($8,200.00). (Exhibit P-6).

The master's award to ex-husband of the water dispensing business is specifically set forth in the proposed decree, where it states:

> ...The right to operate the Crystal Springs water dispensing business plus the real estate on which the business is located which has a value of $40,000.00. The right to operate the business shall include, but not necessarily be limited to, the right to make all decisions on the operation and maintenance of the business, the right to receive all income from the business, and the obligation to pay all of the obligations arising out of operation and maintenance of the business. Husband shall indemnify and hold wife harmless from any and all obligations and claims arising out of his operation and maintenance of the business while it is in his control. However, the business and the surrounding real estate shall remain in joint names. In the event of the death of Husband, Wife shall become the sole owner of the business with all of the rights and responsibilities attendant thereto, In addition, husband may elect to transfer of all his right, title and interest in the business and surrounding real estate during his lifetime in which case Wife shall have the right to ownership and operation of the business, in the event that Husband shall transfer his right, title and interest in the business and real estate to Wife during his lifetime his alimony payments shall be reduced as set forth in this Decree.

Regarding the valuation, ex-husband argues that

the parties agreed that the fair market value of the real estate equals Twenty Thousand Six Hundred Dollars ($20,600.00). In fact, ex-wife did represent that in her "Proposed Decree And Recommendation for Equitable Distribution" that the real estate should be valued at Twenty Thousand Six Hundred Dollars ($20,600.00).

Adding Ten Thousand Dollars ($10,000.00) for the equipment, based upon representations by the parties to their insurance company, appears reasonable. The additional Nine Thousand Four Hundred Dollars ($9,400.00) by the master is entirely speculative. The master felt it necessary to add this figure based on his recognition that the business has some value. Given the lack of information available, the master's estimate of value appears to be sensible.

Ex-husband complains that the master should have reduced the value by the fair market value of the land purchased by ex-husband in 2008 by Thirty-Five Hundred Dollars ($3,500.00). Ex-husband points out that this parcel was purchased post-separation with non-marital assets and should not be included in the value of the real estate or business. Unfortunately, it is not clear whether the master took this into account in reaching his Forty-Thousand Dollar ($40,000.00) figure. Even assuming the master did not properly consider this issue, ex-husband's complaint is offset by other considerations. The real estate appears to be undervalued, being based on a 2010 assessment, which is not indicative of current fair market value, but reflects a 2010 fair market value less the common level ratio applicable at that time. Further, ex-husband conceded that the real estate has commercial value due to its location. Accordingly, this court accepts the master's conclusion as

appropriate.

We turn then to ex-husband's concern that the master granted ex-husband a "life estate" only and should not have placed the value of the property at Forty Thousand Dollars ($40,000.00) on ex-husband's side of the ledger.

Ex-husband is not correct in asserting that he was granted a life estate. The master permitted both parties to retain ownership, and in the event of death of one of the parties, the other party would become sole owner. The master did restrict sale.

## ORDER

And now, February 20, 2013, after argument held, disposition of the ancillary economic claims in divorce are remanded to the master for further proceedings consistent with this opinion. The parties shall submit to the master further information on ex-husband's pension, including any contributions made by ex-husband post-separation of the parties, ex-husband's date of superannuation, whether the retirement pension is currently in pay status, whether the monthly retirement payments would be in the same amount as monthly disability payments, and any other information necessary to assist the master in making his recommendation.

The matter is also remanded to the master to reconsider the findings made regarding the parties' water dispensing business, to make additional findings consistent with this opinion.