32 A.3d 668

**Justin E. FOCHT, Appellee**

v.

**Tracy L. FOCHT, Appellant.**

Supreme Court of Pennsylvania.

Argued April 13, 2011.

Decided Nov. 23, 2011.

Scott Charles Painter, Law Office of Scott C. Painter, P.C., Wyomissing, for Tracy L. Focht.

Byron Michael Yatron, Reading, for Justin E. Focht.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice McCAFFERY.

In this case, we interpret a provision of the Pennsylvania Divorce Code[1] to establish when a cause of action in negligence accrues for purposes of determining whether the settlement proceeds are marital property. Because the Superior Court erred in its interpretation of the relevant statutory provision, we reverse.

On April 1, 1999, Justin E. Focht (hereinafter "Appellee") sustained a serious injury in an accident at the Family Grand Prix Raceway (hereinafter "Raceway") in Leesport, PA. Approximately two weeks later, Appellee and his then-wife Tracy L. Focht (hereinafter "Appellant") retained an attorney to represent them in their respective claims of personal injury and loss of consortium. The Fochts filed suit against the Raceway on September 8, 2000, and the case was settled on November 23, 2004, for a total of $410,000. After payment of attorney's fees and other expenses, Appellee and Appellant received, respectively, $231,618 and $14,784 from the settlement.

Between the dates of the accident and the settlement, specifically on August 1, 2001, the parties separated by mutual

---

1. Act of December 19, 1990, P.L. 1240 No. 206, *as amended,* 23 Pa.C.S. §§ 3101–3904.

consent. Appellee filed a divorce complaint in February 2004, and a divorce decree was entered on January 23, 2009.

During the first year after the settlement of his personal injury suit, by which time the Fochts had separated, Appellee spent his entire portion of the settlement proceeds. He expended some of the proceeds for the purchase of a residence,[2] and then shortly after this purchase, he used the residence to secure a mortgage. Subsequently, when Appellee ceased making mortgage payments, foreclosure proceedings were commenced against him. Pursuant to an agreement with the mortgagee, Appellee sold the residence in 2007 to avoid foreclosure. After payment of the settlement charges, mortgage, taxes, attorney's fees, and expenses for repairs, Appellee recovered only $60,206 from the sale of the residence. This sum of money is the focus of the instant dispute.

During the parties' lengthy divorce proceedings, it became apparent that the only asset involved was the settlement award from the lawsuit. The special master assigned to the parties' divorce case determined that all of the settlement proceeds were marital property, subject to equitable distribution. The special master further concluded that Appellant and Appellee were entitled to, respectively, 25% and 75% of the settlement proceeds. Based on this conclusion and after determining the amount that each party had already received, the master calculated that, of the $60,206 that remained from the settlement proceeds, Appellant was entitled to $44,617 and Appellee was entitled to $15,589. The trial court affirmed the decision of the special master.

The parties cross-appealed the equitable distribution order to the Superior Court. Based on its conclusion that the trial court had erred by including the settlement proceeds in the marital estate, the Superior Court vacated the equitable distribution order.[3] *Focht v. Focht*, 990 A.2d 59 (Pa.Super.2009)

2. Appellee purchased the residence for $156,000, apparently in cash, plus closing costs and other expenses, on December 30, 2004. The deed was placed in the names of Appellee and Rebecca J. Keiffer, his then-girlfriend and the mother of his son.

3. The parties' remaining issues concerned the equitable distribution of the settlement proceeds. Because the Superior Court concluded that

(Table). As its rationale for this decision, the Superior Court relied solely on the fact that settlement in the negligence suit had been reached **after** the parties' final separation.

Appellant filed a petition for allowance of appeal in this Court, asserting that the Superior Court's determination conflicted with this Court's precedential decision in *Drake v. Drake*, 555 Pa. 481, 725 A.2d 717, 722 (1999). We granted Appellant's petition to consider when a cause of action or claim accrues for purposes of determining whether it is marital property pursuant to 23 Pa.C.S. § 3501(a)(8). *Focht v. Focht*, 606 Pa. 505, 1 A.3d 867 (2010).

▆▆ The definition of marital property is set forth in the Divorce Code. The issue before us involves the interpretation of this statutory definition, which, like all statutory interpretation, is a pure question of law. Accordingly, our standard of review is *de novo* and our scope is plenary. *St. Elizabeth's Child Care Center v. Department of Public Welfare*, 600 Pa. 131, 963 A.2d 1274, 1276 (2009). The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly, giving effect, if possible, to all provisions of the statute. 1 Pa.C.S. § 1921(a). In general, the best indication of legislative intent is the plain language of a statute. *Malt Beverages Distributors Ass'n v. Pennsylvania Liquor Control Board*, 601 Pa. 449, 974 A.2d 1144, 1149 (2009). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Words of the statute are to be construed according to their "common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning . . . shall be construed according to such peculiar and appropriate meaning. . . ." 1 Pa.C.S. § 1903(a).

▆▆ The statutory definition of marital property is broad, encompassing "all property acquired by either party during the marriage." 23 Pa.C.S. § 3501(a). The statute presumes

these proceeds were not marital property, it saw no need to address the remaining issues.

that property acquired during the marriage is "marital." *Drake v. Drake*, 555 Pa. 481, 725 A.2d 717, 722 (1999). However, there are eight exceptions to this presumption, which set forth classifications of property that are not considered "marital," including the following:

[M]arital property does not include:

(1) Property acquired prior to marriage....

\*   \*   \*

(4) Property acquired after final separation until the date of divorce....

\*   \*   \*

(8) Any payment received as a result of an award or settlement for any cause of action or claim which *accrued* prior to the marriage or after the date of final separation regardless of when the payment was received.

23 Pa.C.S. § 3501(a) (emphasis added).

With regard to subsection 3501(a)(8), interpretation hinges on the meaning of the word "accrue." There is no statutory definition of accrue. A general legal definition is the following:

To come into existence as an enforceable claim or right; to arise <the plaintiff's cause of action for silicosis did not accrue until the plaintiff knew or had reason to know of the disease>.

Black's Law Dictionary, 8th Ed. (2004).

The above legal dictionary definition is consistent with this Court's long-established, historical understanding, as expressed in *Bell v. Brady*, 346 Pa. 666, 31 A.2d 547, 549 (1943), a case involving application of the statute of limitations, that "a cause of action *accrues* only when one has the right to institute a suit." (Emphasis added). Reiterating the same basic principle, this Court has very recently stated that, "[g]enerally, a statute of limitations period begins to run when a cause of action *accrues; i.e.,* when an injury is inflicted and the corresponding right to institute a suit for damages arises."

*Gleason v. Borough of Moosic,* 15 A.3d 479, 484 (Pa.2011) (emphasis added).

■ We have explained these well-settled principles in more detail as follows:

The Judicial Code provides in pertinent part that limitations periods are computed from the time the cause of action *accrued.* 42 Pa.C.S. § 5502(a). In Pennsylvania, a cause of action *accrues* when the plaintiff could have first maintained the action to a successful conclusion. Thus, we have stated that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. Generally speaking, in a suit to recover damages for personal injuries, this right arises when the injury is inflicted..... Once a cause of action has *accrued* and the prescribed statutory period has run, an injured party is barred from bringing his cause of action.

*Fine v. Checcio,* 582 Pa. 253, 870 A.2d 850, 857 (2005) (emphases added); *see also Wilson v. El–Daief,* 600 Pa. 161, 964 A.2d 354, 361 (2009) (citing *Fine, supra,* as reflective of "the general rule that a cause of action *accrues,* and thus the applicable limitations period begins to run, when an injury is inflicted") (emphasis added).

■ Subsection 3501(a)(8) must be interpreted in the context of this well-established understanding of the concept of accrual of a cause of action. Thus, when a cause of action accrues (*i.e.,* when an injury has been inflicted, leading to the right to institute and pursue a suit for damages) after the date of marriage and before the date of final separation, then any settlement proceeds resolving that cause of action are marital property, regardless of when the settlement actually occurs. 23 Pa.C.S. § 3501(a)(8). Although the statute does not explicitly mention causes of action or claims that accrue *during* a marriage, prior cases from this Court or the Superior Court have addressed such circumstances.

In *Drake, supra,* the contested proceeds comprised a commutation award in a workers' compensation claim, and the question was whether the award was marital property pursu-

ant to subsection 3501(a)(8). The *Drake* parties were married when, in July 1985, husband sustained a work-related injury. He filed a workers' compensation petition shortly thereafter and began receiving biweekly benefits. In April 1988, his status changed to partial disability, but he continued to receive benefits until December 7, 1989, when his benefits were terminated. Then, in October 1990, husband and his employer entered a supplemental, commutation agreement, under which husband would receive a single, lump-sum award to compensate him fully for eight and one-half years of partial disability, beginning on December 7, 1989, the agreed-upon effective date of his partial disability. *Id.* at 719. Approximately three years after husband entered into the commutation agreement, he and his wife separated, and Mrs. Drake filed a complaint in divorce. The appointed master concluded, and the court of common pleas agreed, that the commutation award was marital property because it was received during the marriage and was reimbursement for lost wages. *Id.* at 720. The Superior Court affirmed, and we granted husband's petition for allowance of appeal.

In reviewing the lower courts' holdings, this Court first recognized the wide breadth of subsection 3501(a)(8)'s applicability, as follows:

The Divorce Code at Section 3501(a)(8) makes no distinction concerning the purpose of the award or settlement, but posits that it applies equally to all claims or causes of action for personal injury, lost wages, disability or other damage .... it is irrelevant that the settlement or award is for disability payments, personal injuries, lost wages, or future earnings. **We look only to the timing of the right to receive [the award or settlement].**

\*　　\*　　\*

**The critical question is ... whether the right to seek a commutation of [husband's] earnings accrued during the marriage.**

*Drake, supra* at 725–26 (emphases added).

Reviewing the sequence of events, *see supra,* we further concluded that "as of December 7, 1989, [h]usband certainly

had an enforceable right to this lump sum commutation award, and [h]usband's claim 'accrued,' as that term is used in the Divorce Code, well before the parties separated in July of 1993." *Id.* Because husband's claim accrued during the marriage, before the parties separated, the award was marital property. *Id.*

It is important to recognize the significance of our determination that the *Drake* husband's claim had accrued as of the effective date of his partial disability, to wit, December 7, 1989. As of this date, husband had not actually been granted a commutation award, and indeed husband and his employer had not yet entered into any agreement regarding any compensation for his partial disability. It was not until October 1990 that husband and his employer entered into the commutation agreement, pursuant to which the effective date of husband's partial disability was agreed to have been in the prior year. We concluded that husband's claim "accrued" not when the commutation agreement was entered and the commutation award was actually granted, but rather as of the effective date of husband's partial disability, which is when his right to seek commutation of his earnings arose. *Id.* Although *Drake* involved a workers' compensation claim, not a cause of action in tort, our interpretation of when the *Drake* husband's claim accrued for purposes of subsection 3501(a)(8) was consistent with our well-established understanding of the concept of accrual of a cause of action, as discussed *supra.* Furthermore, our conclusion that the award was marital property was grounded in subsection 3501(a)(8) and based on the determination that husband's claim accrued while the parties were married, before they finally separated.

In *Nuhfer v. Nuhfer,* 410 Pa.Super. 380, 599 A.2d 1348 (1991), the question before the Superior Court was at what point in time an ownership interest in a winning lottery ticket accrued. During the *Nuhfer* parties' marriage, the husband had participated in an office lottery pool. When one of his co-workers filed a winning ticket with the Pennsylvania Lottery Bureau and claimed ownership, litigation ensued to determine whether the co-worker or the office pool was the rightful owner of the ticket. The suit over the lottery ticket settled

after the final separation of the Nuhfers. *Id.* at 1349. The Superior Court concluded that husband's claim had accrued when he had contributed to the purchase price of the lottery ticket, at which time he was married and not finally separated. Therefore, based on a prior version of subsection 3501(a)(8),[4] the court held that the settlement proceeds were marital property, even though settlement had been reached and the claim had been liquidated after the parties had divorced. *Id.* at 1350.

Thus, although the facts of *Nuhfer* and *Drake* were quite different, the holdings by the Superior Court and this Court, respectively, were consistent: an award or settlement arising from a cause of action or claim that accrued during the marriage of the parties, before final separation, is marital property subject to equitable distribution.

■ We now apply these principles to the case before us. Appellant contends that the Superior Court misconstrued the plain text of subsection 3501(a)(8), particularly with respect to the concept of accrual. Appellant argues that Appellee's personal injury cause of action accrued on the date of the accident, or at the latest two weeks later when he retained counsel, because by that time Appellee was fully and completely aware of his injuries and the Raceway's negligent conduct. Appellant's Brief at 10. In contrast, Appellee contends that his personal injury claim did not accrue until the date of settlement, which was the first time that he was actually entitled to the settlement proceeds. Appellee's Brief at 15–18. Appellee insists that a personal injury claim "unliquidated" by verdict or settlement cannot be subject to equitable distribution and, indeed, cannot even be property, much less marital property.[5] *Id.* at 17–19. Like Appellee, the Superior Court

4. *Nuhfer* was decided under the 1980 Divorce Code, 23 P.S. § 101 *et seq.,* as amended by the Act of February 12, 1988, P.L. 66, No. 13, which was the law in effect on September 21, 1989, when the parties' divorce was filed. The text was subsequently consolidated at 23 Pa.C.S. § 3101 *et seq.* Current subsection 23 Pa.C.S. § 3501(a)(8) is for all relevant purposes the same as the old subsection 23 P.S. § 401(e)(8).

5. In Appellee's brief to this Court, he attempts to rely on two cases decided under the Divorce Code as it existed prior to the 1988 Amend-

incorrectly focused on the date of settlement of Appellee's cause of action, in essence concluding that Appellee's cause of action did not "accrue" until a settlement had been reached. In the Superior Court's view, because the parties had separated by the time of settlement, the proceeds were not marital property, even though the injury had occurred and litigation had been initiated prior to the parties' final separation.

The decision advocated by Appellee and reached by the Superior Court is untenable in light of the plain language of subsection 3501(a)(8); our long-established understanding of the concept of accrual of a cause of action; and this Court's and the Superior Court's decisions in, respectively, *Drake* and

ments. *See Budnick v. Budnick,* 419 Pa.Super. 172, 615 A.2d 80 (1992) and *Hurley v. Hurley,* 342 Pa.Super. 156, 492 A.2d 439 (1985). Under the pre–1988 version of the Divorce Code, there was no explicit marital property exception for awards and settlements, *i.e.,* no provision comparable to the current subsection 3501(a)(8). The only possibly relevant marital property exception was for property acquired after separation. 23 P.S. § 401(e)(4) (repealed) (re-enacted in the same substantive form as 23 Pa.C.S. § 3501(a)(4)); *see Budnick, supra* at 82 & n. 1. In *Hurley, supra* at 442, and *Budnick, supra* at 82–83, the Superior Court relied on subsection 401(e)(4) to conclude that a personal injury claim that had not yet been "liquidated" by settlement or verdict could not be considered marital property and thus could not be subject to equitable distribution.

Appellee insists that *Budnick* and *Hurley* remain good law and should be followed here, despite the subsequent amendments to the Divorce Code, which amendments included, most relevantly, the addition of subsection 3501(a)(8). Appellee's Brief at 15–16. Appellee totally misapprehends the import of the addition of subsection 3501(a)(8). In 1991, the Superior Court explained the substantial import of the addition of subsection 3501(a)(8) as follows:

> In *Hurley,* a panel of this court held that for purposes of determining whether the proceeds of a personal injury cause of action, which arose prior to separation were marital property, the court must look to the time the proceeds were received. The 1988 amendment has discarded the time of liquidation as the determinative factor. We must now look to the time the cause of action accrued.
>
> \*    \*    \*
>
> [Based on the 1988 amendments, an] asset is characterized as marital property or non-marital property based on the time the cause of action accrued.

*Nuhfer v. Nuhfer,* 410 Pa.Super. 380, 599 A.2d 1348, 1349 (1991) (internal citations omitted).

Appellee's assertion that subsection 3501(a)(8) did not change the law, *see* Appellee's Brief at 15–16, is entirely untenable, as recognized and explained by the Superior Court twenty years ago.

*Nuhfer.* Paraphrasing *Drake,* the "critical question" here is whether Appellee's right to seek damages for personal injury by filing a negligence suit accrued during his marriage, not whether his suit was settled during his marriage. *See id.* at 726. Appellee errs by conflating two very different concepts: accrual of a cause of action and settlement of a cause of action. By the explicit text of subsection 3501(a)(8), the date of accrual of a cause of action is the only date of relevance.

There is no question that Appellee's cause of action in negligence accrued during his marriage: the accident in which Appellee was injured occurred during his marriage, and he became aware of his serious injuries and of the Raceway's negligence during his marriage, as shown by the fact that he retained counsel and filed suit against the Raceway during his marriage. *See* Notes of Testimony, 12/12/07, at 34–35. All of these events occurred one to two years before the parties' final separation. Thus, because Appellee's cause of action accrued during the marriage, before the parties' final separation, proceeds from the settlement of the suit are marital property. The marital property exception set forth in subsection 3501(a)(8) does not apply, and it is irrelevant that the parties had finally separated by the time the suit settled and the settlement award was liquidated. Accordingly, we reverse the order of the Superior Court.

Finally, we recognize that some prior opinions from the Superior Court concerning subsection 3501(a)(8) have not been consistent with our holding here, nor with *Drake* and *Nuhfer.* In the present case, the Superior Court reached its erroneous holding primarily by relying on *Pudlish v. Pudlish,* 796 A.2d 346 (Pa.Super.2002), another case involving a workers' compensation claim in the context of subsection 3501(a)(8). In *Pudlish,* husband sustained a work-related injury during the marriage, but his employer denied his workers' compensation claim, leading to nearly two years of litigation before a settlement was reached. By the time that husband's claim was settled for a lump sum, husband and wife had separated. *Id.* at 347. Focusing on when the claim was settled—and not on when the claim had accrued—the Superior Court held that the

lump sum settlement was not marital property because husband and wife had separated before husband's claim for benefits was settled. *Id.* at 349–50. For all the reasons discussed in this opinion, we conclude that the Superior Court wrongly decided *Pudlish,* and it is hereby overturned.

Order of the Superior Court reversed and case remanded to Superior Court for resolution of the parties' other issues on appeal. Jurisdiction relinquished.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD and ORIE MELVIN join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

I agree with the majority that a cause of action "accrues," for purposes of Section 3501(a)(8) of the Divorce Code, when the right to institute and maintain a lawsuit first arises. *See* Majority Opinion at 53, 32 A.3d at 671. I differ, however, with the majority to the extent it suggests that the meaning of that term is ascertained by employing the principle that words must be construed according to their common and approved usage. *See id.* at 51–52, 32 A.3d at 670–71 (citing 1 Pa.C.S. § 1903(a)). Rather, as "accrued" is a term of art, I would employ the latter principle contained in Section 1903(a) of the Statutory Construction Act—that "technical words and phrases and such others as have acquired a peculiar and appropriate meaning ..., shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. § 1903(a).[1]

1. While I recognize that the Court has not always limited the instances in which it invoked the common-and-approved-usage rule, I believe the better approach is to employ this principle sparingly, as it stands to reason that there are few words in the English language that have acquired a singular meaning. *See generally Baker v. Ret. Bd. of Allegheny County,* 374 Pa. 165, 171, 97 A.2d 231, 234 (1953) ("It is conceded that words can have a variety of interpretations, depending on context, circumstance, history and juxtaposition to other words, but there are a few words which are immune to mutation, and retain, regardless of rhetorical climate, only one meaning. 'Hereafter' is such a polestar in the sea of language.").

I also do not support the majority's criticism of the Superior Court for adhering to the ruling in *Pudlish v. Pudlish*, 796 A.2d 346 (Pa.Super.2002). *See* Majority Opinion at 56–59, 32 A.3d at 673–75. For one, it is well established that, when sitting as a panel, the Superior Court cannot overrule an earlier decision from that tribunal. *See, e.g., Commonwealth v. Cooper*, 710 A.2d 76, 79–80 (Pa.Super.1998). Therefore, the intermediate court was required to follow the directives of *Pudlish*. Moreover, the *Focht* court criticized that decision, reasoning that it would be "willing to accept another interpretation of *Drake* if [it] were not bound by the *Pudlish* court's interpretation." *Focht v. Focht*, Nos. 336 & 357 MDA 2009, *slip op.* at 6 (Pa.Super. Dec. 17, 2009).