J-A02025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARC A. MISITANO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAWN L. MISITANO | : | No. 568 WDA 2020 |

Appeal from the Order Entered April 28, 2020
In the Court of Common Pleas of Blair County Civil Division at No(s):
2016 GN 3710

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: OCTOBER 28, 2021**

Marc A. Misitano (Husband) appeals from the order denying his exceptions to the Master's recommendations as to equitable distribution, granting, in part, the exceptions filed by Dawn L. Misitano (Wife), and finalizing the divorce action commenced by Husband.  On appeal, Husband argues that the court abused its discretion by relying on the Master's report and recommendation, ordering a 50/50 distribution of the settlement funds for Husband's work-related injury case, and declining to consider Husband's Life Care Plan in fashioning the equitable distribution scheme.  We affirm.

By way of background, we note the following:

The parties, [Husband] and [Wife], were married on May 20, 1992.  The parties separated on or about December 13, 2016. [Husband] filed a complaint in divorce on December 13, 2016. The court appointed Attorney Norman Callan to serve as Divorce Master on June 22, 2018.  The Divorce Master conducted hearings on October 25, 2018, January 10, 2019, and March 5, 2019.

Trial Ct. Op., 4/27/20, at 1-2.

Prior to separation in December 2016, the parties had been married for over 24 years.

[At the start of the parties' marriage, Wife] intended to pursue a career in financing. She worked prior to the marriage full time for Robert Morris Infinity and continued during the marriage until the 1993 birth of their son, [Wife] went back to work part time until 1995 when their twin children were born. In 1999, [Wife] became a full time teller at Keystone Financial where she worked less than 2 years but had to resign after [Husband] got injured in 2001. [Wife] also had some seasonal work in 2008. In November 2010, [Wife] was employed as a part time teller at Reliance Bank where she remained until 2018. She is currently seeking other employment in Virginia. After the 2001 accident, it was decided that the [Wife] would stay home with the children.

During the marriage, [Wife] was mostly a stay at home caregiver in raising their children. [Husband] was, prior to his accidents, the major bread winner. [Wife] has been a major support to the marriage, both as a homemaker and in raising their children as well as contributing her income when employed for marital expenses.

[Husband] worked [at] Union Iron Work, as part of the Union since May 20, 1992. In October 1995, [Husband] was injured at work as he was knocked off of a beam and fell fifteen feet to the ground. He suffered an injury to his knee, chin, teeth, and shoulder. [Husband] went back to work in 1998 or 1999. He worked for about one and a half years before his second accident in October of 2001[, when Husband] suffered an incomplete spinal injury which has left him wheelchair bound. He spent 28 days in a coma and was hospitalized for about three months. [Husband] has had hip operations. He continues to suffer pain in hip, groin and shoulder. He takes pain medication for his constant pain. [Husband] is self sufficient for his condition.

Both parties, as well as their marriage, were impacted by the October 15, 2001 accident. [Husband] suffered the physical injury but both parties endured emotional fallout. The parties filed a lawsuit concerning the accident which included a loss of consortium claim. A settlement was reached in 2005 in the amount of $1.8 million after costs and attorney's fees. There was

no testimony or evidence presented as to the value of the loss of consortium claim. The settlement funds were divided equally and placed in two separate accounts. One account was placed in Husband's name and one account was placed in [Wife's] name. The interest or dividends of both accounts were placed in another cash account. These interest or dividends totaled about $6,400 per month and was used to pay household expenses. The two Stifel accounts, one in each party's name represent the balance of the settlement proceeds.

The only time, to date, that the principal of the two Stifel accounts has been invaded is when the parties purchased land and built the marital residence. The parties paid $100,000.00 for the land and $195,000,00 to build the house.

[Husband] testified as to his current and future health care needs, He will need to replace his current van with one ad[a]pted to his needs. He will need to make renovations to his new residence.

Most of the [Husband's] current health and medical needs are covered by Medicare, social security and supplemental insurance. To date, [Husband] has been able to cover any additional costs by means of his monthly pension payments, social security and monthly investment interest/dividends. For the past 17 years, since the accident, [Husband] has been able to cover his health and medical needs. Since receiving the settlement in 2005, a period of about 14 years, [Husband] has not needed to invade the principal of the settlement proceeds for his health and medical needs.

Master's Report & Recommendation, 3/28/19, at 3-5 (unpaginated) (some formatting altered).

Following the March 5, 2019 hearing, the Master issued a report and recommendation which set forth an equitable distribution scheme between the parties. In relevant part, the Master stated that Husband and Wife were each entitled to half of the funds in the parties' Stifel investment accounts, which held the proceeds from the 2006 settlement for Husband's work-related injury case. *See id.* at 9. However, the Master's report did not explicitly address

the 23 Pa.C.S. § 3502 factors or explain which factors it relied on in reaching its conclusions.

Both Husband and Wife filed exceptions to the Master's report and the trial court issued an opinion addressing the parties' exceptions. Therein, the trial court acknowledged that the Master failed to discuss the equitable distribution factors required by Section 2502. However, the trial court noted that it had conducted an independent review of the factors and ultimately agreed with the Master's recommendation that both parties should receive half of the remaining proceeds from the personal injury settlement. *See* Trial Ct. Op. at 17.

Husband filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion incorporating the reasoning set forth in its order and opinion.

On appeal, Husband raises several issues, which we have reordered as follows:

1. Whether the trial court erred or abused its discretion when it failed to grant Husband's exception objecting to the Divorce Master failing to provide a statement of reasons, or other explanation, for the recommendation of distribution as required by 23 Pa.C.S. § 3506 and relied solely on the cold record of the Master's statement that "he reviewed the equitable distribution factors set forth in 23 Pa.C.S. § 3502, and that he applied these factors in a compassionate reasonable manner to effectuate justice between the parties?

2. Whether the trial court erred or abused its discretion in ordering a result in an overall resolution of the parties' economic claims that fails to effectuate economic justice between the parties as required by the Divorce Code?

3. Whether the trial court erred or abused its discretion in ordering a 50/50 distribution of the investment accounts which hold Husband's workers' compensation lump sum award after consideration of all factors set forth in 23 Pa.C.S. § 3502?

4. Whether the trial court erred or abused its discretion in failing to consider and appropriately weigh Husband's one-hundred percent disability when ordering a 50/50 distribution of the two investment accounts which hold the remaining proceeds of Husband's workers' compensation lump sum award?

5. Whether the trial court erred or abused its discretion in failing to consider, weigh and apply the purpose of Husband's workers' compensation award and all the circumstances surrounding the acquisition and use of Husband's workers' compensation lump sum award in light of the equitable distribution scheme ordering a 50/50 distribution of the two investment accounts which hold the remaining proceeds of Husband's workers' compensation lump sum amount?

6. Whether the trial court erred or abused its discretion in failing to properly consider, weigh, and apply the age, health, station, vocational skills, earning capacity, employability, and needs of Husband and Wife in ordering a 50/50 distribution of the two investment accounts which hold the remaining proceeds of Husband's workers' compensation lump sum award?

7. Whether the trial court erred or abused its discretion in determining the Life Care Plan Review was inadmissible hearsay and subsequently denying Husband's request to remand and supplement the evidentiary record with a witness to cure the evidentiary issue otherwise not present at the equitable distribution hearing?

8. Whether the trial court erred or abused its discretion in failing to properly consider, weigh and apply the Life Care Plan Review was not relevant to the court's decision in dividing up the workers' compensation award?

Husband's Brief at 5-7.

**Reliance on Master's Report**

In his first issue, Husband claims that the trial court abused its discretion by relying on the Master's report, which did not explicitly discuss the equitable distribution factors set forth at 23 Pa.C.S. § 3502. Husband's Brief at 55. In support, Husband argues:

> [Section 3506 of the Divorce Code] provides that in an order made under this chapter for the distribution of property, the court shall set forth the percentage of distribution for each marital asset or group of assets and the reason for the distribution ordered. The Master failed to articulate his reasons for the distribution scheme in his Recommendation and Order. His failure to do this violates the statute and prevented a reviewing court or counsel to address his reasons for the distribution.
>
> The trial court acknowledged in [its] opinion that the Master did not include a reasoning section in his Report and Recommendation. The trial court merely accepted the broad and all-encompassing statement that Master reviewed the factors set forth in 23 Pa.C.S. § 3502 without anything more. This hardly satisfies the requirements of 23 Pa.C.S. § 3506 as it is not reasoning. The entire purpose of 23 Pa.C.S. § 3506 was to avoid this very issue. The trial court then adopted the Master's Report and Recommendation as it pertains without providing the full analysis and reasoning required under this section of the Divorce [Code].

*Id.* at 55-56 (some formatting altered).

Section 3502 of the Divorce Code sets forth the statutory factors that a trial court must consider when fashioning an equitable distribution scheme. *See* 23 Pa.C.S. § 3502(a). This Court has explained:

> [A] trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal

procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa. Super. 2017) (citation omitted).

However, it is well settled that

[t]he weight to be given to statutory factors depends on the facts of each case and is within the court's discretion. We will not reweigh them. We look at the distribution as a whole, in light of a trial court's overall application of the factors enumerated at [Section] 3502(a). In addition we note, the trial court has the authority to divide the award as the equities presented in the particular case may require.

*Busse v. Busse*, 921 A.2d 1248, 1260 (Pa. Super. 2007) (quotation marks and citations omitted).

Additionally, this Court has stated:

In divorce cases, the evidence must be considered *de novo* at every stage of review. The report of the master is entitled to great consideration in that he has heard and seen the witnesses, and it should not be lightly disregarded. It is advisory only, however, and the reviewing court is not bound by it and it does not come to the court with any preponderate weight or authority which must be overcome. The reviewing court must consider the evidence, its weight and the credibility of the witnesses, *de novo*. The Master's report is not controlling, either on the lower court or on the appellate court.

*Rothrock v. Rothrock*, 765 A.2d 400, 404 (Pa. Super. 2000) (citations omitted).

Therefore, "[a]lthough the master's report is entitled to great weight, that final responsibility for making the [equitable] distribution [of property] rests with the court. Our review is thus based on the court's distribution of property." *Tagnani v. Tagnani*, 654 A.2d 1136, 1138 (Pa. Super. 1995) (quotation marks and citation omitted).

Here, the trial court addressed Husband's claim concerning the Master's Report as follows:

> This court has read the entire evidentiary record in this matter. We have also carefully reviewed the parties' exceptions, their briefs in support of their exceptions, their responses to the opposing parties' exceptions, and the Report and Recommendation of Divorce Master Callan. In accordance with the standard of review outlined above, this court has given the Master's Report and Recommendation full consideration. We acknowledge that the Divorce Master did not include in his Report and Recommendation any reasoning section. Divorce Master Callan did, however, indicate that his Report and Recommendation was made after review of the equitable distribution factors set forth in 23 Pa.C.S. § 3502 and that he applied these factors in a compassionate and reasonable manner to effectuate justice between the parties. The standard of review above directs this court to give the Master's Report and Recommendation full consideration but also requires us to conduct our own independent review of the evidence and to arrive at our own conclusions.
>
> After a careful review of the record in this matter, the court believes that it is appropriate to adopt the Report and Recommendation of Divorce Master Callan, with a few exceptions that we will explain in further detail in this opinion. Aside from the exceptions noted, we believe that the Report and Recommendation of the Divorce Master equitably divides these assets after consideration of the factors outlined in 23 Pa.C.S. §

3502 and in a compassionate and reasonable manner that effectuates justice between the parties.

Trial Ct. Op. at 10-11 (some formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court. *See Carney*, 167 A.3d at 131; *see also Busse*, 921 A.2d at 1260. As noted previously, the trial court conducted its own independent review of the record, which included a discussion of the relevant Section 3502(a) factors and the parties' exceptions. *See* Trial Ct. Op. at 7-11. Therefore, to the extent Husband seeks redress based on alleged errors in the Master's report, he is not entitled to relief on that basis. *See Tagnani*, 654 A.2d at 1138 (stating that our review is based on the trial court's distribution of property, not determinations by the Master).

**Equitable Distribution Award**

In his next five issues,[1] Husband argues that the trial court abused its discretion by ordering a 50/50 distribution of the investment account which held the remaining proceeds from the personal injury settlement.[2] Husband's Brief at 18. In support, he claims that the trial court failed to consider and

---

[1] We note that Husband has combined these issues into one section in his brief. *See* Husband's Brief at 16-55.

[2] Throughout his brief, Husband refers to the funds held in the parties' Stifel investment accounts as a workers compensation award. However, the record reflects that those funds were derived solely from the personal injury settlement that Husband and Wife received in 2006, not from a workers' compensation award. *See* N.T. Master's Hr'g, 1/10/19, at 149-52 (reflecting Husband's testimony that the parties received a settlement for the personal injury/loss of consortium suit, which was subject to a workers' compensation lien).

appropriately weigh (1) Husband's disability; (2) the purpose of the settlement award and the circumstances surrounding its acquisition and use; (3) the age, health, station, vocational skills, earning capacity, employability, and needs of the parties. *Id.* at 48. Husband argues that "[n]early every one of the applicable measures of equitable distribution weigh heavily in favor of Husband." *Id.* at 47.

Further, Husband asserts that the 50/50 distribution scheme implies that both parties have "equally suffered and will continue to equally suffer as a result of that work related accident. To ignore the loss suffered by Husband in dividing this asset, and treating it as an asset that was acquired through means other than a significant work related injury[,] is not equitable and not appropriate." *Id.* at 47. Therefore, Husband concludes that the trial court's distribution award "woefully fails to effectuate economic justice between the parties and ensure a fair and just determination of their property rights as required" by Section 3102. *Id.* at 45.

It is well settled that "an award or settlement arising from a cause of action or claim that accrued during the marriage of the parties, before final separation, is marital property subject to equitable distribution." *Focht v. Focht*, 32 A.3d 668, 673 (Pa. 2011). Therefore, we review the trial court's equitable distribution of the settlement funds for an abuse of discretion. *See Kozich v. Kozich*, 580 A.2d 390, 393 (Pa. Super. 1990) (stating that "[t]he equitable distribution of marital property is within the sound discretion of the

trial court, whose decisions shall not be disturbed on appeal absent an abuse of that discretion" (citation omitted)).

Here, the trial court addressed the 50/50 distribution of the settlement funds as follows:

> This court finds that most of the marital assets in this marriage came about as a result of the part employment and work related injuries of Husband. Husband's 2001 injury left him completely disabled. This injury consisted of an incomplete spinal cord injury that resulted when he fell from a thirty-five (35) foot man lift. As a result of this injury, Husband has neuropathy and chronic pain. Husband is wheelchair bound and there has been no evidence that his condition will improve. The evidence suggests that with increased age he may face additional health challenges. The testimony establishes that Husband has to use catheters and also has to digitally remove fecal matter from his body when he uses the bathroom. While Husband does not need the assistance of any round the clock nursing care, the court believes that evidence suggests that gainful employment is highly unlikely. We also believe that with increasing age, he may have to expend additional sums for his daily living due to his disability. His housing may also need accommodations due to his disability as he ages.
>
> We have balanced the above equities that we believe weigh in favor of Husband against other considerations that benefit Wife. The parties were together for over twenty-four (24) years. During the twenty-four (24) year marriage, Wife relied on Husband as the breadwinner in the family. Wife also relied on Husband's health insurance coverage. While Husband disputes the effort that Wife put into her employment during certain stages of the marriage and believes that she is not working to her full potential after separation, Husband concedes that on numerous occasions during the marriage, he was in agreement with Wife not being employed. This occurred after the birth of the children, while she assisted in the care of Husband for a period of time after the 2001 work related accident, and during her recovery from breast cancer. Wife also provided sound advice on Husband's work related settlement from his 2001 injury, advice that has benefitted the parties substantially.

The award that the court will enter today which includes the Stifel account and the proceeds from the sale of the marital residence will allow each party to have over $1,000,000.00 in cash or investments. The testimony established that the parties were able to live their daily lives without decreasing the value of their Stifel account. The only exception was when they purchased the marital residence. We believe that the amount of value that exists in the Stifel account and marital residence, as well as the other assets are an important consideration when examining the parties' future needs, earning capacities, and potential retirement. The distribution of assets in this divorce will leave them both financially stable.

\* \* \*

[W]e agree with Husband's assessment of the precedent applicable to the court's determination of this settlement[, in that] there is no premise of law that says that the settlement funds should automatically be distributed equally. This court's decision to divide them equally is after consideration of the entire assets and liabilities of the parties as discussed herein.

As we previously explained, we have considered all of the factors including the length of marriage, the contributions of both parties, and the value of the assets that will be available to the parties after this divorce. It is also important to point out that the settlement funds in this matter included a loss of consortium claim. We recognize that the loss of consortium claim is diminished in light of the divorce. However, it is reasonable to consider a portion of the settlement based on Wife's loss of consortium during the marriage. The evidentiary record in this matter is also devoid of any evidence to suggest how the settlement was to be distributed between the loss of consortium claim and Husband's injuries. Regardless, Husband concedes that the entire Stifel account is a marital asset subject to distribution. For the reasons that have already been explained in this opinion, we believe that an equal distribution of the Stifel account is appropriate. We think an equal distribution takes into consideration both parties' contributions to each other and to the marriage and effectuates economic justice in this case.

Trial Ct. Op. at 10-12, 17-18 (some formatting altered, footnote omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court. **See Kozich**, 580 A.2d at 393. As noted previously, the trial court considered the requisite statutory factors and ultimately concluded that both parties were entitled to half of the remaining funds from the personal injury settlement, which was marital property subject to equitable distribution. **See** Trial Ct. Op. at 10-12, 17-18 ; **see also Focht**, 32 A.3d at 673. Although Husband disagrees with the weight the trial court afforded to those factors, we will not re-weigh the evidence on appeal. **See Busse**, 921 A.2d at 1260. Accordingly, Husband is not entitled to relief.

## Life Care Plan

In his remaining claims, Husband argues that the trial court erred by failing to consider Husband's Life Care Plan.

By way of background to this issue, we note that during the course of litigation for the personal injury lawsuit in 2005, the parties obtained a Life Care Plan, which provided a projection of future costs associated with Husband's disability. At the Master's hearing, Husband presented the Life Care Plan in order to support his claim that he was entitled to ninety percent of the remaining proceeds from that settlement.[3] **See** N.T. Master's Hr'g, 10/25/18, at 149.

---

[3] With respect to the Life Care Plan, Husband's counsel explained:

> So one of the documents I had provided [to Wife's counsel] in providing him the exhibits before today was a Life Care Plan

*(Footnote Continued Next Page)*

The trial court explained:

During the [Master's] hearing, Wife's counsel objected to the Life Care Plan being admitted into evidence. In her brief in support of her exceptions and in her reply brief, Wife argue[d] that the Life Care Plan [wa]s inadmissible hearsay. At the evidentiary hearing, Wife's objections to the Life Care Plan focus[ed] on an argument that the Life Care Plan [was] too prejudicial and likely should not be considered relevant. Husband argued at the time of the evidentiary hearing that both parties benefited from the Life Care Plan and for that reason it should be admitted. In his reply brief, Husband assert[ed] that the document was not admitted for the truth as contained in the document and therefore is not hearsay. To the extent that it would be deemed to be hearsay, Husband argue[d] that the medical diagnosis exception to the hearsay rule applies. We also note that Husband argue[d] that if the document is found by this court to be hearsay, we should permit Husband to supply a witness to testify to the document.

This court believes that the Life Care Plan is inadmissible hearsay. We believe that the intent of the admission of the Life Care Plan at the evidentiary hearing was to bolster Husband's argument that the Divorce Master should provide him a more significant amount of the Stifel account in the equitable distribution. Therefore, the value of the items contained in the cost projections are admitted for their truth. We do not believe that the medical diagnosis exception applies to this document as most of the statements contained in the Life Care Plan document are expert calculations

---

Review and as happens in these catastrophic injury cases, during the litigation of that case, which [Wife] has testified that she was a party to, one of the reports that was generated was a Life Care Plan Review . . . [a report detailing the estimated cost of Husband's lifetime care, which] was used to determine damages or at least alleged damages in that underlying personal injury loss/workers comp litigation. This report was generated for the benefit of both of them in that litigation, assuming that a portion of it was designed to be provided to [Wife] through what she has alleged to be her loss of consortium claim. We wanted to present this as an exhibit for the purpose of establishing what was used during the litigation to establish value of that settlement proposal.

N.T. Master's Hr'g, 10/25/21, at 112-13.

of the value of certain items which would purportedly be needed by Husband for his future care. They are not statements that Husband made to a medical professional. . . .

Despite our conclusion that the document is inadmissible hearsay, we do not believe that the admission of this document is relevant to the court's decision in this case. The Life Care Plan was prepared by an expert during the parties' litigation and was completed in 2005. The report projected certain costs that appear to have never been borne in this marriage such as items for vocational rehabilitation, individual counseling and family counseling. Simply put, this court believes that the best and most relevant evidence of the details of the future needs pertaining to Husband's condition were testified to at the Divorce Master's Hearings by Husband and Wife. It is the evidentiary record created at the Divorce Master's Hearings that this court finds to be sufficiently relevant for us to make a decision in this case. We do not give projections from over a decade ago any weight. In addition, considering that the settlement is a marital asset subject to equitable distribution despite the extent of Husband's injuries, we do not find the Life Care Plan relevant to the court's decision.

Trial Ct. Op. at 21-22 (some formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court in declining to consider Husband's Life Care Plan. As noted by the trial court, Husband testified at length regarding the extent of his disability, his current health expenses, and the future costs he is likely to incur as a result of his disability. *See* N.T. Master's Hr'g, 10/25/18, at 181-197. Therefore, the trial court did not err by failing to consider the Life Care Plan document, which was prepared for litigation purposes nearly fifteen years prior to the parties' divorce.[4] Accordingly, Husband is not entitled to relief on this claim.

---

[4] In light of our conclusion, we do not address Husband's argument concerning hearsay.

For these reasons, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/28/2021